**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

LATROYA GRAYSON,                                          :
                                                         :
                              Plaintiff,                 :        Civil Case No.:
          v.                                             :
                                                         :
                                                         :        **COMPLAINT**
SEAN COMBS a/k/a "P. DIDDY, DIDDY, PUFF, PUFF           :
DADDY, PUFFY, BROTHER LOVE",                             :
BAD BOY ENTERTAINMENT HOLDINGS, INC.,                    :
ATLANTIC RECORDS,                                        :
MIKE SAVAS,                                              :
DELTA AIRLINES,                                          :
KKJAMZ 105.3FM,                                          :        **JURY TRIAL DEMAND**
ROGER SMITH HOTEL, and                                   :
JOHN AND JANE DOES 1-10                                  :
                              Defendants.                :
-----------------------------------------------------------------------X

| |
|---|
| **TRIGGER WARNING:** <br> **THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION.** |

Plaintiff, LATROYA GRAYSON ("PLAINTIFF" or "PLAINTIFF GRAYSON" or "MS. GRAYSON"), by and through her attorneys, hereby alleges and avers of the Defendants, SEAN COMBS a/k/a "P. DIDDY, DIDDY, PUFF, PUFF DADDY, PUFFY, BROTHER LOVE" ("DIDDY" or "COMBS"), BAD BOY ENTERTAINMENT HOLDINGS, INC. ("BBE"), ATLANTIC RECORDS ("ATLANTIC"), MIKE SAVAS ("SAVAS"), DELTA AIRLINES ("DELTA"), KJAMZ 105.3 ("KJAMZ"), ROGER SMITH HOTEL ("HOTEL") and JOHN AND JANE DOES 1-10 ("DOES") (collectively referred to as "DEFENDANTS"), alleges upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1. On November 16, 2023, Casandra Ventura a/k/a "Cassie" filed a 35-page lawsuit in which she exposed Defendant Combs of subjecting her to nearly a decade of physical,

sexual and emotional abuse punctuated by rape, sex trafficking and being forced to engage in drug fueled nonconsensual sexual encounters with other men.

2.  Ordinarily, when a lawsuit such as Ms. Ventura's is filed that involves events that took place long ago, witnesses are few and far between and evidence hard to muster. Not so for the claims brought against Defendant Combs. Within minutes of the filing Ms. Ventura's claims were confirmed by various witnesses, including a rival musician whose car Defendant Combs blew up, various individuals who observed Defendant Combs beat Ms. Ventura and a video released by CNN, showing Defendant Combs physically abusing, battering and assaulting Ms. Ventura.

3.  Since Ms. Ventura's brave decision to file a lawsuit against Defendant Combs, Defendant Combs has accumulated numerous lawsuits across the country for the same conduct alleged by Ms. Ventura. The number is growing and continuous in various jurisdictions throughout the United States.

4.  In September 2024, Defendant Combs was arrested in the Southern District of New York where he is currently being held with no bond while awaiting various serious criminal charges.[1]

5.  Plaintiff now alleges she too is one of the many victims of Defendants Combs and the other Defendants named herein.

6.  Plaintiff can support her allegations and has suffered extreme emotional distress impacting nearly every aspect of Plaintiff's life and personal relationships. Given all the brave individuals who have come forward against Defendant Combs, Plaintiff is also doing the same.

---

[1] *United States v. Combs*, U.S.D.N.Y. 24-cr-542(AS)

7. Plaintiff brings this action seeking injunctive, declaratory and monetary relief against Defendants in violation of the Victims of Gender-Motivated Violence Protection Law, Gender Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"), .

## <u>JURISDICTION AND VENUE</u>

8. This Court has personal jurisdiction over the Defendants under and consistent with the Constitutional requirements of Due Process in that the Defendants, acting directly or through his agents or apparent agents, committed one or more of the following:

   a. The transaction of any business within the state;

   b. The making of any contract within the state;

   c. The commission of a tortious act within this District; and

   d. The ownership, use, or possession of any real estate in this state.

9. As of the date of this filing, Defendants have consistently and purposefully availed themselves of the privilege of conducting activities within New York, thus invoking the benefits and protections of New York law. In return for these benefits and protections, Defendants must submit to the burdens of litigation in New York.

10. This litigation arises from or relates to the tortious activities the Defendants visited upon Plaintiff in New York. This tortious conduct violated United States Federal Rico Laws and other laws.

11. Requiring Defendants to litigate these claims in this District does not offend traditional notions of fair play and substantial justice. Plaintiffs' claims arise from conduct occurring by Defendants in New York.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 for original jurisdiction over civil actions where the matter in controversy exceeds to the sum and value of $75,000 and is between citizens of different states. This Court also has subject matter jurisdiction under 28 U.S. Code § 1332 and supplemental jurisdiction under 28 U.S. Code § 1367 because the state law claim forms part of the same case and controversy as the claim arising under the federal statute.

13. Pursuant to 28 U.S.C. § 1391(b), (c) and 1400(a), venue is proper in this Court because a substantial part of the events or omissions giving rise to this action, alleged herein, occurred in this district.

14. Plaintiff brings suit against Defendants pursuant to the NYC Gender Motivated Violence Act, N.Y.C. Admin. Code §§ 8-901 *et. seq*, to redress the substantial and lifetime injuries she has suffered.

15. This Court has personal jurisdiction over Defendants and each of them because Defendants have purposefully directed their unlawful conduct to this judicial district and have conducted substantial business in this judicial district.

## PROCEDURAL REQUIREMENTS

## THE N.Y.C. VICTIMS OF GENDER MOTIVATED VIOLENCE PROTECTION ACT

16. The N.Y.C. Victims of Gender Motivated Violence Protection Act ("NYC Gender Motivated Violence Act") created a lookback window on March 01, 2023, which runs for two years, for survivors of gender motivated violence, allowing them to sue their abusers regardless of when the abuse occurred. N.Y.C. Admin. Code § 10-1105(a).

17. The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of

violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

18. The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94 (App. Div. 2019).

19. The conduct of Defendants in battering and assaulting Plaintiff constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as well as specifically at Defendant Combs direction, enabling, participation and conspiring in the commission of a crime of violence motivated by gender as defined by the NYC Gender Motivated Violence Act.

20. Given the extensive media coverage of the criminal trial brought by the Southern District of New York and numerous civil lawsuits filed in both Federal and State against Defendant Combs, Defendants were put on notice of the multiple allegations made against Defendant Combs including drug trafficking, sex trafficking and racketeering.

**PARTIES**

**DEFENDANT SEAN COMBS**



21. Defendant Combs is currently an inmate Metropolitan Detention Center in Brooklyn, NY. Defendant Combs maintains residences in California and Florida and is believed to be a resident of the State of California.

22. At all relevant times to the occurrences herein, Defendant Combs was a citizen and resident of the State of New York.

23. Defendant Combs is a rapper and record executive popularly known by his stage names Puff Daddy, Puffy, Puff, P. Diddy, Diddy, Brother Love or Love. Defendant Combs rose to prominence in the music and entertainment industry over the decades and is regularly referred to as a hip-hop mogul. Defendant Combs was first accused of acts described in this complaint by his long-time paramour and former BBE artist, Cassie Ventura as pictured above, on November 16, 2023.

24. Defendant Combs is a Grammy-awarded musician, rapper and producer.

25. Defendant Combs founded Defendant BBE.

26. In 2008, two years after the assault and battery on Plaintiff, Defendant Combs was the first male rapper to get a star on the Hollywood Walk of Fame.

27. In 2022, Forbes estimated that Defendant Combs is one of the wealthiest hip-hop artists in America and that his net worth is over $1 billion.

28. Upon information and belief, Defendant Combs has a long history of committing physical and sexual violence against women and men, similarly alleged in this complaint, as documented in publicly available in nine lawsuits across the country and extensive media coverage.

**DEFENDANT BAD BOY ENTERTAINMENT HOLDINGS, INC.**



29. Defendant Bad Boy Entertainment Holdings, Inc., is a domestic business corporation license to do business in New York and headquartered at 1440 Broadway, Third Floor, New York, NY 10018.

30. Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation licensed to do business in New York since 1992.

31. Defendant Bad Boy Entertainment Holdings, Inc. is a music, media, and entertainment company founded and owned by Defendant Sean Combs. Bad Boy is incorporated and headquartered in New York, New York.

32. Defendant BBE has been named in several lawsuits where Defendant Combs has been accused of claims of sexual abuse and sex trafficking as alleged in the instant complaint.

**DEFENDANT ATLANTIC RECORDS**



33. Defendant Atlantic Recording Corporation is a domestic business corporation licensed to do business in New York and headquartered at either 1290 Ave of Americas, New York, NY 10104 or 1633 Broadway, New York, NY 10019.

34. Defendant Atlantic Recording Corporation is a domestic business corporation licensed to do business in New York since 1967.

35. Defendant Atlantic Recording Corporation is a music, media, and entertainment company incorporated and headquartered in New York, New York.

36. Defendant Atlantic was responsible for and facilitated the event that lured Plaintiff to Defendant Combs in New York where she was injured.

### DEFENDANT MIKE SAVAS



37. Defendant Savas, upon information and belief, is a citizen, resident and is domiciled in the State of New York.

38. Defendant Savas, upon information and belief and confirmed by Defendant Savas' LinkedIn page, was an employee of Defendant Atlantic at all relevant times.

39. Defendant Savas, in his employment capacity with Defendant Atlantic, was responsible for promoting, coordinating and arranging the promotional contest which was the cause of Plaintiff's injuries.

### DEFENDANT DELTA AIRLINES



40. Defendant Delta operates an airline, license to do business in New York with its headquarters located at 1030 Delta Blvd., Atlanta, GA 30354.

41. Defendant Delta's ongoing relationship and participation with Defendants Combs, Atlantic and KJAMZ was to transport potential victims to Defendant Combs, was corrupt, exploitive to Plaintiff and to benefit Defendant Delta and other members of the enterprise.

42. Defendant Delta, in their capacity as a common carrier, was responsible for transporting and arranging the delivery of Plaintiff, and possibly all contest winners, to Defendants which ultimately led to Plaintiff's injuries.

### DEFENDANT KKJAMZ 105.3



43. Defendant KJAMZ is a radio broadcast station in Oklahoma.

44. Upon information and belief Defendant KJAMZ is an Oklahoma domestic business corporation licensed to do business in Oklahoma since 1991.

45. Defendant KJAMZ was responsible for and facilitated the event that fraudulently enticed Plaintiff to New York where she was injured.

**DEFENDANT ROGER SMITH HOTEL**



46. Defendant Roger Smith Hotel operates a hotel, license to do business in New York and located at 501 Lexington Ave., New York, NY 10017.

47. Defendant Roger Smith Hotel's ongoing relationship and participation with Defendants Combs, Atlantic and KJAMZ was to provide lodging to potential victims to Defendant Combs, was corrupt, exploitive to Plaintiff and to benefit Defendant Hotel and other members of the enterprise.

48. Defendant Roger Smith Hotel, in their capacity as a common carrier, was responsible for the accommodations of Plaintiff, and all contest winners, which ultimately led to Plaintiff's injuries.

**DEFENDANTS JOHN AND JANE DOES 1-10**

49. Upon information and belief, Plaintiff alleges that Defendant Does 1 through 10, inclusive, are other parties not yet identified who have violated Plaintiff by assaulting, battering and threatening her, conspired, and/or aided and abetted the Defendant Combs and the other Defendants in their participation in a corrupt organization that caused Plaintiff's injuries. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained, pursuant to CPLR §1024.

50. Upon information and belief, Plaintiff believes all of the Defendant Does 1-10 are citizens of the State of New York.

51. Upon information and belief, Plaintiff believes and thereon alleges that at all times relevant hereto each of the Defendant l Does 1-10 were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of Defendants Combs, BBE, Atlantic, Delta, Hotel and/or KJAMZ and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff's proximately caused thereby.

52. The limitations Article 16 of the CPLR do not apply because one or more of the exceptions set forth in CPLR §1601 and/or §1602 apply.

**PLAINTIFF LATROYA GRAYSON**



53. Plaintiff is an individual who is a citizen of the United States and a resident and domiciled in Oklahoma.

54. Plaintiff, at all times relevant to the action, was a resident and domiciled in the State of Oklahoma.

55. Plaintiff, at all times relevant to the action, was 23 years old.

56. Plaintiff had never traveled to New York City prior to the events described herein and otherwise would not have traveled to New York City without being enticed by the scheme of Defendants.

57. Plaintiff was the guest of her half sibling who won the contest on Defendant KJAMZ's radio station and agreed to accompany her sibling on what she believed to be legitimate all-expenses paid trip to a Diddy "white partie" in New York in 2006 and her life has been detrimentally impacted ever since.

## FACTUAL ALLEGATIONS

### The Radio Contest

58. In late 2006, Defendant KJAMZ began promoting a contest on its radio station, 105.3 Jamz in Oklahoma sponsored by Defendants Combs, BBE, Atlantic and Delta, offering the winner a prize of an all-expenses paid vacation for two to New York City to attend a "Diddy White Party."

59. At this point, Defendant Comb's "White Parties" were legendary and ongoing as they had begun in 1998 and were in full swing by 2006.

60. Eagerly, Plaintiff and her sibling tried to win the KJAMZ radio contest.

61. Eventually, Plaintiff's sibling was able to win the contest.

62. The contest included round trip airfare for the winner and a guest, one hotel room in New York and two tickets to attend Diddy's "White Party" in New York.

63. Upon information and belief this was not a traditional "White Party" thrown by Defendant Combs, as those typically occurred during Labor Day holiday, but a separate promotional party.

64. Initially, the party was scheduled for October 6, 2006, but was then rescheduled without warning or explanation. Plaintiff received an initial letter from Atlantic providing instructions on how to attend the party and the details of the party, dated for the original date of the "White Party."



65. The party was then rescheduled for October 16, 2006. Plaintiff was provided a plane
   ticket, issued by Delta, for departure on October 16, 2006 from Tulsa to New York JFK
   airport returning to Tulsa the next day on October 17, 2006.




66. In addition to the date of the party being rescheduled, the theme of the party was also
   changed from a "White Party" to a "Black Party."

67. Due to the change of required colored attire to attend the party, Plaintiff was forced to
   purchase a new outfit that was within the new theme and dress requirements for
   admittance.

68. Plaintiff and her sibling had never been to New York City and were very excited about
   their trip and their attendance at a celebrity party hosted by Defendant Combs.

69. Plaintiff and her sibling rented a limousine to transport them from the airport to the hotel
   in an effort to make the most of their free trip.




70. Upon arrival in NYC, Plaintiff checked into the prearranged hotel, The Roger Smith Hotel.



71. Plaintiff was required to pay a cash deposit to the hotel which was provided and paid by Atlantic.



**The "Black Party"**

72. Plaintiff changed into her requisite black outfit and met the transportation van, arranged by Atlantic employee Mike Savas, downstairs at the hotel.

73. Along with Plaintiff in the transportation van, arranged by Atlantic employee Mike Savas, were several other contest winners who won the same contest in their home cities

and were subsequently flown to New York as radio contest winners for this "Diddy Black Party."

74. Upon arrival at the location where the "Black Party" was thrown, Plaintiff, and the other contest winners, were forced to wait in line for entrance into the party.



75. Plaintiff, and other contest winners, were approved for entry by security based on their appearances and their attire. Individuals were not let into the party based on their position in line but based on their attractiveness and attire.

76. After waiting in the line for approximately forty-five minutes, Plaintiff was finally granted entry into the party. Even though Plaintiff was granted entry her sibling was not and Plaintiff was separated from her sibling before realizing her sibling had not also granted entry into the party.

77. Plaintiff did not see nor does she remember seeing her sibling at the partym during Plaintiff's time inside the party.

78. While inside the party, Plaintiff took pictures with some of the celebrities in attendance including rappers Babz, from Making the Band, and Bonecrusher.




79. At one point Plaintiff met an individual who purported to be Defendant Combs' assistant and he befriended Plaintiff, who was alone.



80. While at the party, there was no bar for partygoers to get drinks. Instead premade drinks were being circulated throughout the party by waitresses.



81. After less than two premade drinks, provided by the waitresses, Plaintiff began to feel sick and tried to go to the restroom.

82. The next memory Plaintiff has is awaking at Saint Vincent's Medical Center of New York.



83. Plaintiff has no memory or no recollection on how she ended up at the hospital.

84. When Plaintiff's regained consciousness at the hospital she noticed her shirt was ripped, her underwear was missing, she was not wearing any shoes and the money she had

traveled with was stolen. The only money Plaintiff had remaining was a twenty-dollar bill.

85. Plaintiff was admitted to the Saint Vincent's hospital, treated and released.



86. Upon her release from the hospital, Plaintiff, a tourist, had no way of knowing how to return to her hotel as smartphones were not commonplace at the time.

87. Plaintiff remained in the waiting area of the lobby of the hospital after her release for so long she was eventually forced out by hospital security.

88. Plaintiff was able to find a book of matches in her purse bearing the name of the hotel she was domiciled.

89. Plaintiff then hailed a taxi and returned to the hotel using the twenty-dollar bill she had left in her purse.

90. When Plaintiff returned to her hotel, she called a friend and explained she was not sure what happened to her, but Plaintiff believed she was drugged, assaulted, robbed with no memory of how she arrived at the hospital as her last memory was being at " Diddy's Black Party."

91. Plaintiff had virtually no time to process or further determine what happened to her as her flight back to Oklahoma left at 3:50pm October 17, 2024. Less than 24 hours after Plaintiff arrived in New York City.

92. The day after Plaintiff returned home from New York, she received a call from a new York area code with an anonymous female caller.

93. The anonymous female caller asked to speak to Plaintiff. The anonymous female caller then threatened Plaintiff telling her that any attempts to pursue anything about Plaintiff's assault would be futile because Defendant Combs was a "celebrity" and that Plaintiff would "just be wasting her time."

94. Plaintiff was confused and scared as she did not know what happened to her. Plaintiff hearing from this anonymous female caller was further jarring and traumatizing as Plaintiff learned that not only was she viciously assaulted, leading to her waking up at the hospital, but that Defendant Combs was involved and Plaintiff would be unable to seek justice for her injuries because of Defendant Combs celebrity status.

95. When Plaintiff tried to ask the anonymous female caller her name and how she obtained Plaintiff's phone number the anonymous female caller hung up.

96. When Plaintiff tried to call the number back the number was disconnected.

97. For approximately a week after Plaintiff returned home she felt constant pain in the inside and outside of her vagina. Pain she believed was from rough intercourse, however Plaintiff had no memory of engaging in intercourse with anyone.

98. Plaintiff did not seek medical treatment or otherwise report her assault to law enforcement because she was scared and confused. First, because she did not know exactly what happened to her. Second, because of the threats she received from the anonymous female caller of Defendant Comb's involvement and it being a waste of time due to his celebrity status

99. Plaintiff became severely depressed and felt shame despite not fully remembering what happened to her.

100.    Plaintiff felt betrayed by Defendants, specifically Defendants Combs, Atlantic and KJAMZ, because she believed attending a party thrown by Defendant Combs would be a safe environment. Plaintiff felt betrayed by Defendants Atlantic and KJAMZ because they failed to protect her despite creating, promoting and financing a contest that lead to her injuries and lured her to an unsafe place without warning.

101.    The assault and fear after the assault led Plaintiff into a tailspin of anxiety and depression.

102.    Plaintiff was unable to maintain employment or otherwise be a productive member of society for at least a year after her assault and battery in New York City.

103.    Plaintiff believes Defendants committed the assault and battery against her solely because of her gender.

104.    Plaintiff has been reminded of her assault by Defendant Combs, as he is an inescapable presence in music, television, and film.

105.    Plaintiff has also experienced intimacy issues, struggling to maintain emotional and romantic relationships.

106.    Defendant Combs has altered the trajectory of Plaintiff's life.

107.     To this day, Plaintiff experiences bouts of depression, anxiety, body image issues, feelings of worthlessness, and intimacy issues because of her trauma stemming from her assault.

108.     Plaintiff feared further violence and/or retaliation from Defendant Combs in filing this lawsuit, but since Defendant Combs has been incarcerated with no bond Plaintiff feels safe to seek redress for her injuries.

109.     Plaintiff seeks justice for herself and for any of other Defendant Combs' victims including the countless victims who have already filed suit against Defendant.

## FIRST CAUSE OF ACTION
### CONDUCT AND PARTICIPATE IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY A VIOLATION OF RACKETEER INFLUENCED ANDCORRUPT ORGANIZATION ACT, CODIFIED AT 18 U.S.C. § 1962(A), (C)-(D)
### (Against ALL Defendants)

110.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

111.     Defendants ("RICO orchestrators") are 100% liable for the actions of Defendant Combs. Defendants financially benefited through their partnership with Defendant Combs. The RICO orchestrators provided Defendant Combs with unfettered access to resources and failed to adequately investigate, supervise, and or monitor how those resources were being used, who was using those resources and the purpose of use of those resources.

112.     The support provided by the RICO orchestrators to Defendant Combs was a lifeline that spearheaded and maintained the Defendant Combs' depraved actions. Upon information and belief, the establishment of a business relationship with a prominent record label, Atlantic, prominent common carriers, Delta and Roger Smith Hotel, allowed

for a distribution platform for all Defendant Combs business endeavors to disguise his true intentions with overly broad and vague in nature description of activities. Defendants knew or should have known that Defendant Combs had no intention to utilize the resources he received for business related purposes and they did not put any mechanism in place to ensure that their resources, specifically their publication, were not being used for any illegal activity. Defendants' willful blindness resulted in Plaintiff suffering the harm detailed herein.

113.    Defendants are individuals and entities within the meaning of "person" as defined in 18 U.S.C. § 1961(3) because each is capable of holding, and does hold, "a legal or beneficial interest in property." The RICO orchestrators association was composed of Defendants Combs, BBE, Atlantic, Savas, Delta, KJAMZ, Hotel and Does.

114.    In the relevant part, 18 U.S. Code 1961 defines a racketeering activity as:

(1) (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, ***dealing in obscene matter,*** or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... *section 933 (relating to trafficking in firearms)*, section 1341 *(relating to mail fraud)*, **section 1343 (relating to wire fraud)**, **sections 1461–1465 (relating to obscene matter), section 1511 (relating to the obstruction of State or local law enforcement)**, sections 1581–1592 *(relating to peonage, slavery, and trafficking in persons)*, **section 1952 (relating to racketeering)**, *section 1956 (relating to the laundering of monetary instruments)*, (D) any offense involving fraud connected with a case under title 11...the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical.

115.    Section 1962(a) makes it: ***unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity*** or through a collection of an unlawful debt in which such person has participated as a principal within

the meaning of Section 2, Title18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any Enterprise which is engaged in, or the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a).

116.     Section 1962(c) makes it: ***unlawful for any person employed by or associated with any Enterprise engaged in,*** or the activities of which affect, interstate or foreign commerce, ***to conduct or participate***, directly or indirectly, in ***the conduct of such Enterprise's affairs through a pattern of racketeering activity.*** 18 U.S.C. §1962(c).

117.     Section 1962(d) makes it: unlawful for ***"any person to conspire to violate"*** Section 1962(a) and (c), among other provisions. 18 U.S.C. § 1962(d).

118.     Defendants mentioned herein are associated with each other as an Enterprise within the meaning of "Enterprise" as defined in 18 U.S.C. § 1961(4).

119.     Plaintiff, in its pleading, has detailed acts by Defendants which are prohibited under 18 U.S.C. §1962.

120.     Defendants have unlawfully increased their profits by luring and deceiving individuals such as Plaintiff under false pretenses for Defendants' personal desires, deviances and gain.

121.     The RICO Enterprise activities affected interstate commerce, is comprised of an association of persons, including each Defendant and other unnamed co-conspirators herein. That association was structured by various agreements, deals, contracts, and non-contractual relationships between the Defendants, by which Defendants assumed different roles in knowingly and directly or indirectly participating in the acts necessary to carry out the directives of the Enterprise. As detailed herein, Plaintiff was a guest of a

contest winner who won an all-expenses paid trip to New York City to attend a "Diddy

party." Defendant Atlantic arranged for travel of Plaintiff with Defendant Delta and

lodging accommodations with Defendant Hotel.

122.　　Defendant Atlantic further arranged for transportation to the party while providing

NO transportation from the party.



123.　　Defendants all share a common purpose: to use deception, coercion, force, and the

threat of violence to enrich themselves at the expense of individuals like the Plaintiff. As

set forth herein, although all Defendants may not have directly threatened coerced, forced

or violently threatened Plaintiff, they financially benefitted from the scheme. It is

reasonable to believe Defendants would not have engaged in these acts of threats but for

the existence of the RICO scheme and their understanding that they would have

unfettered access to engage in their illegal and corrupt Enterprise without question.

124.　　As evidenced in Plaintiff's complaint herein, Defendants all orchestrated,

participated, managed, and executed the RICO Enterprise.

125.     Defendant Delta transported victims, including Plaintiff, on commercial airlines
to New York City to be a guests of the "Black Party" and/or to Defendant Combs
directly.

126.     The RICO Enterprise has functioned as a continuing unit and maintains an
ascertainable structure separate and distinct from the pattern of racketeering activity.

127.     This jurisdiction has criminally accused Defendant Combs of engaging in
racketeering, and both cases have similar fact patterns and descriptions of racketeering
activities.

128.     Defendants disseminated their concealed scheme to Plaintiff in Oklahoma using
interstate telephone wires and radio waves.

129.     The true nature of Defendants' Enterprise was left undisclosed, was omitted,
and/or was affirmatively misrepresented, all to fraudulently increase Defendants' profits,
at least some of which were used to expand the Enterprise, causing further injury to
Plaintiff and possibly many others.

130.     Upon information and belief, Defendants profited from the Enterprise, and used
the proceeds from the Enterprise to advance the Enterprise by funding and operating their
marketing machine, including through the use of the mail, magazine coverage, word of
mouth, and interstate wires to sell the illusion that Defendant Combs was a serious and
legitimate businessman who held exclusive parties and networking events that were safe
and fun to attend, when nothing could be further from the truth.

131.     Defendants Atlantic, Savas, KJAMZ, Delta and Hotel were a direct participant in
the marketing aspect of the scheme as it was Defendant Atlantic's contest promotion

executed by its employee, Defendant Savas, the promotions coordinator, with Defendants Delta and Defendant Hotel providing travel and lodging.

132.    Defendant KJAMZ provided the general public at large misrepresentative information, including over interstate wireline communications systems via their radio program on 105.3FM radio in Oklahoma.

133.    Upon information and belief, Defendants obtained revenue via wire transfers, documents, and banking transactions that were exchanged via electronic means over interstate wires, thereby growing the Enterprise and causing further injury to Plaintiff as described throughout.

134.    Defendants' scheme was reasonably calculated to deceive Plaintiff of ordinary prudence and comprehension through the execution of their complex and illegal scheme to misrepresent the true purpose of Defendant Combs' parties and that attending those parties would lead to assault, battery or overall danger to Plaintiff. Plaintiff would have never engaged in any regard with Defendant Combs if not but for the complex and illegal racketeering scheme operated by Defendants.

135.    Upon information and belief, Defendants each had the specific intent to participate in the overall RICO Enterprise scheme and each participated in the Enterprise as follows:

    a.    Upon information and belief, Defendants control and participate in the activities of the Enterprise in a variety of ways as set forth herein, including but not limited to, developing marketing campaigns to legitimize Defendant Combs' parties to the general public.

b.  Upon information and belief, throughout the relevant period, Defendants Atlantic, KJAMZ, Delta, and Hotel entered into a partnership agreement with Defendant Combs and BBE as general business partners, each member is responsible for the partners' actions in the partnership. Defendants have an ethical obligation to ensure their business partners were not using the partnership to engage in illegal activity.

c.  Defendants Atlantic, KJAMZ, Delta, and Hotel provided resources to their general business partners, Defendants Combs and BBE. Defendants Combs and BBE used the resources provided by their general business partners to entice the public to desire to attend his lavish and exclusive parties. Defendants Combs and his coconspirators, relied on the mail, world wide web  and telephone to disseminate the misleading information described herein. Defendants did not disclose to the individuals they solicited the fact that they would be drugged, assaulted or battered while attending events sponsored by and starring Defendants and their business.

d.  Defendants authorized the resources to their general business partner, Defendant Combs in furtherance of the goals of their conspiracy. Defendants used the contest promotion and party as a ruse to provide Defendants Combs and BBE cover to disguise their covert RICO Enterprise. Throughout the relevant period, Defendants used their collective resources relying on the mail, email, radio and world wide web to disseminate the misleading information described herein. As the general business partner of Defendants Combs and BBE, Defendants are equally liable for the commission of these acts.

e.  Defendant Atlantic ensured cash payments to Plaintiff, were executed. Plaintiff does not recall receiving appropriate United States federal tax documents for payments or the value of the trip as if they independently declared these payments on their taxes. It is unclear if Defendants requested an audit of Defendant Combs business financial records to ensure the resources provided to Defendant Combs was not being used to fund illegal activities.

136.    During the ten (10) years preceding the filing of this action and to the present, all Defendants did cooperate jointly and severally in the commission of predicate acts itemized at 18 U.S.C. §§ 1961(1), in violation of 18 U.S.C. 1962(d), as described in this Complaint.

137.    Beginning at an exact date unknown to Plaintiff, but within ten (10) years preceding the filing of this action, Defendants have knowingly, willfully, and unlawfully participated in a pattern of racketeering activity that continues possibly to this day.

138.    The "Racketeering Acts" followed the same pattern and purpose: to defraud the Plaintiff for the Defendants' benefit. Each Racketeering Act involved the same or similar methods of commission and participants.

139.    Defendants' business would not have succeeded without the repeated predicate acts and the ability to conduct their fraud using mail, telecommunications wires, interstate travel, and possibly money laundering.

140.    The Racketeering Acts all relate to each other in that they were part of concerted actions by Defendants to use the endorsement and channels of the Enterprise to operate their businesses to solicit potential victims as detailed herein.

141.    The separate Racketeering Acts all relate to each other in that they were part of concerted actions by Defendants to use the endorsement and channels of the Enterprise to operate their businesses to fraudulently induce Plaintiff.

142.    Defendants' wrongful conduct has injured Plaintiff and continues to threaten Plaintiff and the public.

143.    Defendants' association with the Enterprise enabled Defendants to conduct, direct, and control a pattern of fraudulent, illegal activities over a substantial number of years, which continues to this day.

144.    To further their collective goals, Defendants worked in concert to engage in various forms of criminal activity at the direction and demand of Defendant Combs'.

145.    Defendant's ongoing racketeering activity has injured and continues to injure Plaintiff.

**Defendants Committed Multiple Acts of Mail Fraud in Violation of 18 U.S.C. § 1341 in Furtherance of the Enterprise**

146.    Defendants voluntarily and intentionally devised and participated in a scheme with the intent to defraud Plaintiff.

147.    Defendants used the mail to execute the fraudulent scheme herein.

148.    Specifically, the Defendants agreed to each of the acts of mail fraud described throughout this Complaint. In addition, they agreed to rely on the mail to distribute their marketing materials, contest instructions, secure wires and cash payments from other participants in the scheme.

149.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme to defraud, Defendants, either individually or in

combination with themselves, used and caused to be used the U.S. mail by both placing

and causing to be placed, marketing materials, advertisements, agreements and other

matters in depositories and by removing, or causing to be removed, letters and other

mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. §

1341.

150.     Defendants could not have furthered their fraudulent scheme without the use of

the mail. For example, without the mail, Defendants would be unable to conduct any

business relevant to its purposed creation. Defendants also required the mail to distribute

misleading advertisements to various states, including Oklahoma. For these reasons, the

use of mail to conduct fraudulent activity was necessary and inevitable.

**Defendants Committed Multiple Acts of Wire Fraud in Violation of 18 U.S.C. § 1343 in Furtherance of the Enterprise**

151.     Defendants voluntarily and intentionally devised and participated in a scheme

with the intent to defraud Plaintiff.

152.     Defendants agreed to each of the acts of wire fraud described herein.

Additionally, Defendants agreed to rely on interstate wires to disseminate funds to others

in the Enterprise. Defendants illegally acquired and utilized wire transfers to further their

collective goal of furthering their RICO Enterprise.

153.     Defendants agreed that Defendants should facilitate these fraudulent purchases

over interstate wires in furtherance of the scheme.

154.     In furtherance of and for purposes of executing the above-described fraudulent

and illegal course of conduct and scheme or artifice to defraud, Defendants, either

individually or in combination with themselves, used, or caused to be used, interstate

wire communications to transmit or disseminate false, fraudulent, and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. § 1343.

155.        Defendants could not have furthered their fraudulent scheme without the ability to use telecommunications to share information with clients and retailers nationwide. Defendants needed to communicate with clients and retailers around the country, utilizing interstate telecommunications wires to conduct the fraudulent activity. Which was necessary and inevitable to use.

156.        Plaintiff has been damaged in her business or property because Defendants violated 18 U.S.C. § 1962(a), (c)-(d)), and, therefore, Plaintiff is entitled to recover the damages and other remedies enumerated therein.

157.        Defendants' acts or omissions were actuated by actual malice and a willful and wanton disregard for the consequences suffered by Plaintiff, were directed towards her because of her gender, and with knowledge of a high degree of probability of harm to Plaintiff and reckless indifference to the consequences of their acts or omissions.

158.        Compensatory damages alone will be insufficient to deter such conduct in the future. There needs to be a criminal referral to the United States Justice Department, as well as to the States Attorney General's Office.

**WHEREFORE,** Plaintiff requests that the Court issue an Order and grant Judgment to the Plaintiffs as follows:

- Grant Plaintiff statutory, common law, and punitive damages, and applicable pre- and post-judgment interest, in full recompense for damages;

- Enter judgment according to the declaratory relief sought;

- Grant Plaintiff such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

- Grant Plaintiff an Incentive or Service Award reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## <u>SECOND CAUSE OF ACTION</u>
### ASSAULT AND BATTERY
### (Against Defendants Combs and Does)

159.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

160.     As set forth above, the Defendants Combs and Does did initiate nonconsensual contact with Plaintiff; did forcibly touch Plaintiff; did drug Plaintiff without her knowledge or consent; did intimidate and cause Plaintiff's safety and security to feel threatened; and did assault and sexually battery Plaintiff.

161.     Defendants made offensive bodily contact with Plaintiff, constituting harmful and offensive contact to Plaintiff's person. Said contact was done intentionally by Defendants and without Plaintiff's consent or legal justification.

162.     As alleged herein, Defendants acts against Plaintiff created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person. Said acts were done intentionally by the Defendants and without Plaintiff's consent or legal justification.

163.    As alleged herein, the Defendants' acts against Plaintiff constituted harmful and offensive contact to Plaintiff's person, which were done intentionally by the Defendants without Plaintiff's consent or legal justification.

164.    As alleged herein, Defendants' acts against Plaintiff created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person. Said acts were done intentionally by Defendants without Plaintiff's consent or legal justification.

165.    Inasmuch as each Defendant was acting for, upon, and/or in furtherance of the enterprise, Defendants BBE and Atlantic are liable under the doctrine of *respondeat superior* for the tortious actions of its Defendant actors.

166.    As a result of the foregoing, Plaintiff was caused to sustain physical, psychological and emotional injuries, pain and suffering, shame, embarrassment, humiliation, damage to reputation, has been caused to incur pecuniary losses, and was otherwise damaged.

**THIRD CAUSE OF ACTION**
**NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION**
**(Defendants BBE, Atlantic, and KJAMZ)**

167.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

168.    The offenses alleged herein resulted, in whole or in part, due to the failure of Defendants BBE, Atlantic and KJAMZ to employ qualified persons for positions of authority, and/or to train and supervise the conduct of such persons during their employment, and/or to promulgate appropriate policies and procedures either formally or by custom properly or conscientiously.

169.     Defendants were negligent in their hiring, training, retention, supervision, direction, control, appointment and/or promotion of their employees, agents and/or servants, including but not limited to each of the defendants named herein.

170.     Defendants knew or should have known in the exercise of reasonable care the propensities of their employees and partners to engage in the wrongful conduct heretofore alleged herein.

171.     Defendants were negligent, careless and reckless in its screening, hiring, training, retention, supervision, direction, control, appointment and promotion of their agents, servants and employees in that said employees lacked the experience and ability to be hired by said Defendant(s); in failing to exercise due care and caution in their screening, hiring, appointment and promotion practices, and in particular, hiring individuals who lacked the mental capacity and ability to function on behalf of said Defendants; in that these individuals lacked the maturity, sensibility and intelligence to function on behalf of said Defendants; in that said Defendants knew of the lack of ability, experience and maturity of these individuals when they hired them; knew of the propensities of said individuals to act in the belligerent, aggressive, violent and illegal manner in which they did; in that said Defendants, their agents, servants and/or employees, failed to supervise, train, suspend and/or terminate these individuals when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

172.     The failure of the Defendants to adequately train its agents, servants an employees in the reasonable exercise of their job duties and the laws of the United States of America, is evidence of the Defendants' reckless lack of cautious regard for the rights of the public in general and Plaintiff in particular, and exhibited a lack of that degree of due

care which reasonable and prudent individuals would show under the same or similar circumstances.

173.     Defendants knew or should have known in the exercise of reasonable care, the propensities of its agents, servants and employees to engage in the wrongful conduct heretofore alleged in this Complaint.

174.     Defendants knew or should have known that its policies, customs and practices, as well as its negligent hiring, retention, supervision, training, appointment and promotion of its agents, servants and employees, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of abuse, misconduct, and neglect would not be swiftly and effectively investigated nor adverse employment action, or prosecution, taken.

175.     The mistreatment, abuses, and violations of Plaintiff's rights, as set forth above, were the reasonably foreseeable consequence of Defendants negligent conduct.

176.     The aforesaid acts and omissions of Defendants its agents, servants and employees, resulted in the Plaintiff's rights being violated and her being injured.

177.     As a result of the conduct complained of herein, Plaintiff suffered the damages alleged.

178.     As a result of the foregoing, Plaintiff is entitled to an award of compensatory damages, punitive damages, and reasonable attorney's fees, together with costs, expert fees, and disbursements.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against ALL Defendants)**

36

179.    Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

180.    Each Defendant, inclusive of their agents, servants and employees, owed Plaintiff a duty of care, including the duty to prevent her from being assaulted, battered, drugged and injured.

181.    Each Defendant, inclusive of their agents, servants and employees, breached their duty of care to Plaintiff.

182.    Each Defendant, inclusive of their agents, servants and employees, was negligent in the instance in that no reasonable person under the same or similar circumstances would have lured Plaintiff under false pretenses to be assaulted, battered, drugged and injured.

183.    Each Defendant, inclusive of their agents, servants and employees, was negligent in the instance in that no reasonable person under the same or similar circumstances would have caused and/or allowed Plaintiff to be drugged, assaulted and left unconsciousness at a hospital.

184.    The negligence of each Defendant, inclusive of their agents, servants and employees, in the instance was the proximate cause of the injuries and damages suffered by Plaintiff.

185.    Inasmuch the Defendants were acting for, upon, and/or in furtherance of the RICO enterprise and/or within the scope of their employment, Defendants BBE, Atlantic and KJAMZ are liable under the doctrine of *respondeat* superior for the tortious actions of same.

186.     As a result of the conduct complained of herein, Plaintiff suffered the damages

alleged.

187.     As a result of the foregoing, Plaintiff is entitled to an award of compensatory

damages, punitive damages, and reasonable attorney's fees, together with costs, expert

fees, and disbursements.

## FIFTH CAUSE OF ACTION
## THE NYC VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION ACT
### (Against ALL Defendants)

188.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as

if set forth fully herein.

189.     The NYC Gender Motivated Violence Act revives any claims against "a party

who commits, directs, enables, participates in, or conspires in the commission of a crime

of violence motivated by gender has a cause of action against such party in any court of

competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

190.     The herein described conduct of Defendants included forcibly drugging and

assaulting Plaintiff at a party thrown for radio contest winners, constitutes a "crime of

violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in

N.Y. C. Admin Code § 10-1103. ("The term 'crime of violence' means an act or series of

acts that would constitute a misdemeanor or felony against the person as defined in state

or federal law or that would constitute a misdemeanor or felony against property as

defined in state or federal law if the conduct presents a serious risk of physical injury to

another, whether or not those acts have actually resulted in criminal charges, prosecution,

or conviction," and "The term 'crime of violence motivated by gender' means a crime of

violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

191.    Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

192.    Defendants' crimes of violence were motivated by Plaintiff's gender as defined in in the New York City Administrative Code § 8-903, as either Defendant Combs or Does committed forcible sex acts upon Plaintiff that would constitute felonies under state law and as the conduct presents a serious risk of physical injury, whether or not those acts have resulted in criminal charges, prosecution, or conviction.

193.    The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94 (App. Div. 2019).

194.    The described conduct herein of Defendants Combs and/or Does constitutes sexual offenses as defined in Article 130 of the New York Penal Law.

195.    Plaintiff is a woman, who is older than 18, who alleges misdemeanor and/or felony penal law violations, including but not limited to sexual misconduct (N.Y. Penal L. § 130.20), criminal sexual act in the first degree (N.Y. Penal L. § 130.50), criminal sexual act in the third degree ( N.Y. Penal L. § 130.40), forcible touching (N.Y. Penal L. § 130.52), sexual abuse in the first degree (N.Y. Penal L. § 130.65), and sexual abuse in the second degree ((N.Y. Penal L. § 130.60).

196.     Defendants Combs and/or Does drugged Plaintiff and engaged in sex acts with her unconscious person, whereas Plaintiff could not refusal or be an unwilling participant.

197.     Defendant Combs demanded Plaintiff drink laced alcohol while a guest at his party as there was no other option for refreshments other than the ones provided by the waitresses at the party. Thus, Defendant Combs knew or should have known that Plaintiff was incapable of consenting to sexual contact and/or sexual conduct.

198.     Defendants' actions presented a serious risk of physical injury to Plaintiff's person, regardless of whether or not those acts resulted in criminal charges, prosecution or conviction.

199.     Furthermore, Defendants BBE, Atlantic, Savas, Delta, KJAMZ, Hotel and Does enabled Defendant Combs' commission of the crimes of violence motivated by gender, and thus, are liable under the NYC Victims of Gender-Motivated Protection Act.

200.     Defendants enabled or participated in the assault, battery and drugging of Plaintiff because Defendants failed to, among other things, (1) protect Plaintiff from a known danger; (2) have sufficient policies and procedures in place to prevent sexual assault; (3) properly implement policies and procedures to prevent sexual assault; (4) take reasonable measures to ensure that policies to prevent sexual assault were working; (5) train their employees on identifying sexual assault and inappropriate workplace behaviors; (6) protect their employees from sexual assault; and (7) adhere to the applicable standard of care.

201.     Defendants enabled or participated in the assault, battery and drugging of Plaintiff because Defendants failed to timely and properly educate, train, supervise, and/or

monitor their agents or employees regarding policies and procedures that should be followed when assaults are suspected or observed.

202.    Defendants knew, or should have known, that Defendant Combs was not fit to be in a position of authority. Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Defendant Combs' propensity to commit sexual assault and of the risk to Plaintiff's safety. At the very least, Defendants knew, or should have known, that they did not have sufficient information about whether or not their leaders, managers, and people were safe to be in positions of power.

203.    Defendants knew, or should have known, that Defendant Combs posed a risk of sexual violence, assault, harassment and battery.

204.    Defendants failed to properly supervise Defendant Combs and protect Plaintiff from a known danger, and thereby enabled Defendant Combs' assault of Plaintiff.

205.    Defendants negligently deemed that Defendant Combs was fit to be in a position of authority; and/or that any previous suitability problems Defendant Combs had were fixed and cured; and/or that Defendant Combs would not commit acts of sexual assault, battery, harassment or trafficking; and/or that Defendant Combs would not injure others.

206.    Moreover, Defendants Atlantic, Savas, Delta and KJAMZ facilitated the trafficking and assault of Plaintiff by actively maintaining and employing Defendant Combs in a position of power and authority through which Combs had control over people, including Plaintiff.

207.    As a direct and proximate result of the aforementioned crime of violence and gender- motivated violence, Plaintiff has sustained and will continue to sustain, monetary

damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants that:

- Declares Defendant Combs engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that Combs drugged, assaulted and battered Plaintiff;

- Declares that Defendants BBE, Atlantic, Savas, Delta, KJAMZ, Hotel and Does engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that they enabled Defendant Combs' commission of the crimes of violence motivated by gender;

- Awards Plaintiff compensatory damages for mental, and emotional injury, distress, pain and suffering and injury to her reputation, consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts in an amount to be proven;

- Awards Plaintiff damages against Defendants joint and severally;

- Awards Plaintiff punitive and exemplary damages according to proof;

- Awards Plaintiff attorneys' fees, costs, and expenses incurred in the pursuance of this action;

- Awards prejudgment and post-judgment interest; and

- Awards Plaintiff such other and further relief as the Court may deem equitable and proper.

## SIXTH CAUSE OF ACTION
## NEGLIGENT INFLICTION of EMOTIONAL DISTRESS
### (Against ALL Defendants )

208.      Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

209.      Defendants created an unreasonable risk of causing emotional distress to Plaintiff, and Defendants knew or should have known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

210.      Plaintiff's emotional distress was foreseeable to Defendants.

211.      As a direct and proximate result of the negligent conduct of Defendants, specifically Defendant Combs and/or Does, Plaintiff suffered and will continue to suffer severe emotional distress.

212.      Defendants conduct was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

## SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against ALL Defendants)

213.      Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

214.      Defendants engaged in conduct toward Plaintiff that is extreme and outrageous to exceed the bounds of decency in a civilized society, namely by, *inter alia,* subjecting her to sexual assault, battery and misconduct.

215.    The sexual assault, battery and misconduct by Defendants were extreme and outrageous conduct that shocks the conscience.

216.    These actions were taken with the intent to cause or disregard for the substantial probability of causing severe emotional distress.

217.    As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

218.    Defendants conduct, specifically Defendant Combs, was wanton, malicious, willful, and/or cruel, entitling the Plaintiff to punitive damages.

**FINAL PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for all of the relief enumerated and sought within this complaint.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein, so triable, pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully Submitted,

Dated: December 20, 2024                    By:/s/ Ariel E. Mitchell, Esq.
Ariel E. Mitchell, Esq.
**The Law Office of Ariel E. Mitchell, P.A.**
500 NW 2nd Ave. #12864
Miami, FL 33103
305-903-5835
ariel@arielesq.com
*Attorney for Plaintiff*
(pro hac vice motion pending)

By:/s/ Steven A. Metcalf, II, Esq.
Steven A. Metcalf, II, Esq.
**METCALF & METCALF**
99 Park Ave., Suite 110

New York, NY 10004
646-253-0514
*Attorney for Plaintiff*
(Co-counsel/local counsel)