**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LATROYA GRAYSON,

                   Plaintiff,

   -against-

SEAN COMBS a/k/a "P. DIDDY, DIDDY, PUFF,
PUFF DADDY, PUFFY, BROTHER LOVE", BAD
BOY ENTERTAINMENT HOLDINGS, INC.,
SEAN JOHN CLOTHING LLC., ATLANTIC
RECORDS, MIKE SAVAS, DELTA AIRLINES,
CROBAR NIGHTCLUB NYC ("CROBAR,"),
PENSKE MEDIA CORPORATION "PMC," VIBE
MAGAZINE "VIBE," PERRY BROADCASTING
AND PUBLISHING "KJAMZ," BEST BUY CO.,
INC. "BEST BUY," ROGER SMITH HOTEL, and
JOHN AND JANE DOES 1-10,

                   Defendants.

Civil Case No. 24-CV-9857 (JAV)

**ORAL ARGUMENT REQUESTED**


**MEMORANDUM OF LAW IN SUPPORT OF SEAN COMBS, BAD BOY
ENTERTAINMENT HOLDINGS, INC., AND SEAN JOHN CLOTHING LLC's
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**


SHER TREMONTE LLP
90 Broad St., 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Defendants Sean Combs, Bad
Boy Entertainment Holdings, Inc., and
Sean John Clothing LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.    ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED ............................................ 4

    A.    The Applicable Statute of Limitations for Each of the Claims Has Expired. ......... 5

    B.    The VGMVPL Revival Provision Does Not Revive the VGMVPL Claim Because it Is Preempted ................................................................................................... 6

    C.    No Tolling Doctrine Applies to Save the Time-Barred Claims. .......................... 12

II.   EVEN IF PLAINTIFF'S CLAIMS WERE TIMELY, THE AMENDED COMPLAINT FAILS TO STATE A CLAIM. ........................................................................... 15

    A.    All Claims Fail to State a Claim Because the Factual Allegations Are Merely Speculative and/or Conclusory ........................................................................... 16

    B.    The Amended Complaint Fails to State a RICO Claim (COA 1) ........................ 21

    C.    The Amended Complaint Fails to Plead Claims for Negligent Hiring/Supervision (COAs 4–10), Negligence (COA 11) or NIED (COA 13). ................................. 25

    D.    The Claims for NIED (COA 13) and IIED (COA 14) Should Be Dismissed As Duplicative. .......................................................................................................... 25

    E.    The Amended Complaint Fails to State a VGMVPL Violation Against BBE and SJC (COA 12) ...................................................................................................... 26

CONCLUSION ..................................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Atuahene v. City of Hartford*,
 10 F. App'x 34 (2d Cir. 2001) ............................................................................ 20

*Adams v. Jenkins*,
 No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) .............................. 14

*AJ Energy LLC v. Woori Bank*,
 No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019)............................... 19

*Albany Area Builders Ass'n v. Town of Guilderland*,
 74 N.Y.2d 372 (1989)................................................................................... 7

*Angiulo v. Cty. of Westchester*,
 No. 11-CV-7823 (CS), 2012 WL 5278523 (S.D.N.Y. Oct. 25, 2012).................................. 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................ 15, 16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007) ............................................................................. 16

*Babb v. Capitalsource, Inc.*,
 588 F. App'x 68 (2d Cir. 2015) ....................................................................... 23

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................ 2, 15, 16

*Bellino v. Tallarico*,
 No. 24-CV-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024)............................ 7, 11

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
 69 F. Supp. 3d 360 (S.D.N.Y. 2014) ................................................................... 21

*Calamari v. Panos*,
 131 A.D.3d 1088 (2d Dep't 2015) ...................................................................... 6

*Cedar Swamp Holdings, Inc. v. Zaman*,
 487 F. Supp. 2d 451 (S.D.N.Y. 2007) ................................................................. 22

*Chwick v. Mulvey*,
 81 A.D.3d 161 (2d Dep't 2010) ...................................................................... 10

*Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*,
 988 F.3d 127 (2d Cir. 2021) ........................................................................... 6

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 121 (2d Cir. 2013) ................................................................................ 22

*D. Penguin Bros. v. City Nat'l Bank*,
   No. 13-CV-0041 (TPG), 2014 WL 982859 (S.D.N.Y. Mar. 11, 2014) ............................ 22, 24

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
   770 F. Supp. 2d 426 (E.D.N.Y. 2011) .................................................................... 24

*Diaz v. City Univ. of N.Y.*,
   No. 15-CV-1319 (PAC), 2015 WL 13746673 (S.D.N.Y. Nov. 16, 2015) ............................ 14

*DJL Rest. Corp. v. City of New York*,
   96 N.Y.2d 91 (2001) ............................................................................................ 7

*Doe v. Black*,
   No. 23-CV-6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ........................ 7, 11

*Doe v. Combs*,
   No. 23-CV-10628 (JGLC), 2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024) .................. 11, 12, 26

*Ellul v. Congregation of Christian Bros.*,
   774 F.3d 791 (2d Cir. 2014) .................................................................................. 5

*Entretelas Americanas S.A. v. Soler*,
   840 F. App'x 601 (2d Cir. 2020) ............................................................................ 23

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011) ................................................................................ 19

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................................................... *passim*

*Ghartey v. St. John's Queens Hosp.*,
   869 F.2d 160 (2d Cir. 1989) .................................................................................. 5

*Gilmore v. Combs et al.*,
   No. 24-CV-8440 (JPO), 2025 WL 1425326 (S.D.N.Y. May 16, 2025) ........................ 13, 15

*Gilmore v. Combs et al.*,
   2025 WL 1548860 (S.D.N.Y. May 30, 2025) ............................................................ 13

*Gomez v. City of New York*,
   304 A.D.2d 374 (1st Dep't 2003) .......................................................................... 25

*Gottwald v. Sebert*,
   40 N.Y.3d 240 (2023) ........................................................................................ 12

*Jones v. Combs*,
   No. 24-CV-1457 (JPO), 2025 WL 896829 (S.D.N.Y. Mar. 24, 2025) .................................. 24

*Kimberly Stines v. Alvaro Sanch*,
   No. 21-CV-7884 (DEH), 2025 WL 1435067 (S.D.N.Y. May 19, 2025) ............................... 26

*Kleinman v. Elan Corp.*,
   706 F.3d 145 (2d Cir. 2013) .................................................................................................. 3

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012) .................................................................................................. 5

*Levin v. Sarah Lawrence Coll.*,
   747 F. Supp. 3d 645 (S.D.N.Y. 2024) .................................................................................. 5

*Lewis v. City of New York*,
   762 F. Supp. 3d 290 (S.D.N.Y. 2025) .................................................................................. 3

*Louis v. Niederhoffer*,
   No. 23-CV-6470 (LTS), 2023 WL 8777015 (S.D.N.Y. Dec. 19, 2023) ................................ 12

*Low v. Robb*,
   No. 11-CV-2321 (JPO), 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ................................... 20

*Lynn v. McCormick*,
   No. 17-CV-1183 (CS), 2017 WL6507112 (S.D.N.Y. Dec. 18, 2017) ................................... 22

*Mahn v. Allegis Grp., Inc.*,
   No. 24-CV-8326 (GHW), 2025 WL 1504818 (S.D.N.Y. May 24, 2025) ............................. 26

*McBeth v. Porges*,
   171 F. Supp. 3d 216 (S.D.N.Y. 2016) ................................................................................. 16

*McKenzie v. Artists Rts. Soc'y, Inc.*,
   757 F. Supp. 3d 427 (S.D.N.Y. 2024) .................................................................................. 5

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir.1999) ................................................................................................ 23

*Nussenzweig v. diCorcia*,
   9 N.Y.3d 184 (2007) ............................................................................................................ 8

*O'Neill v. Wilder*,
   204 A.D.3d 823, (2d Dep't 2022) ....................................................................................... 18

*O'Neill v. Wilder*,
   Index No. 712235/2018, (N.Y. Sup. Ct., Queens Cnty., November 15, 2018) ...................... 17

*Overall v. Est. of Klotz*,
  52 F.3d 398 (2d Cir. 1995) ........................................................................ 12, 13, 14

*Parker v. Alexander*,
  No. 24-CV-4813 (LAK), 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025)............................ *passim*

*Pasternack v. Lab. Corp. of Am. Holding*,
  27 N.Y.3d 825 (2016).............................................................................. 25

*Police Benevolent Ass'n of City of New York, Inc. v. City of New York*,
  40 N.Y.3d 417 (2023)............................................................................... 7

*Pressley v. City of New York*,
  233 A.D.3d 932 (2d Dep't 2024) .................................................................. 18

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
  35 N.Y.3d 332 (2020)............................................................................ 10

*Reich v. Lopez*,
  858 F.3d 55 (2d Cir. 2017) .................................................................... 23

*Roeder v. J.P. Morgan Chase & Co.*,
  523 F. Supp. 3d 601 (S.D.N.Y. 2021) ........................................................ 14

*S.A. v. Bell*,
  No. 950279/2021, 2023 WL 8653131 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023)........................ 10

*S.S. v. Rockefeller Univ. Hosp.*,
  No. 159929/23, 2025 WL 1559583 (N.Y. App. Div. June 3, 2025).............................. 12, 26

*Sanfo v. Avondale Care Grp., LLC*,
  No. 21-CV-7267 (KPF), 2022 WL 3448100 (S.D.N.Y. Aug. 17, 2022) .......................... 19

*Simcuski v. Saeli*,
  44 N.Y.2d 442 (1978)............................................................................. 15

*Staehr v. Mack*,
  No. 07-CV-10368(DAB), 2011 WL 1330856 (S.D.N.Y. Mar. 31, 2011) ............................ 3

*Tchatat v. City of New York*,
  No. 14-CV-2385 (LGS), 2015 WL 5091197 (S.D.N.Y. Aug. 28, 2015) ........................... 5, 6

*Turley v. ISG Lackawanna Inc.*,
  774 F.3d 140 (2d Cir. 2014) .................................................................. 25

*Twersky v. Yeshiva Univ.*,
  993 F. Supp. 2d 429 (S.D.N.Y. 2014) ............................................................ 5

*United States v. Indelicato,*
   865 F.2d 1383 (2d Cir. 1989) ............................................................ 23

*Wolkstein v. Morgenstern,*
   275 A.D.2d 635, 637, 713 N.Y.S.2d 171 (2000) ................................ 25

*Yong Wen Mo v. Gee Ming Chan,*
   17 A.D.3d 356 (2d Dep't 2005) .......................................................... 6

*Zoe G. v. Frederick F.G.,*
   208 A.D.2d 675 (2d Dep't 1994) ........................................................ 13

**Statutes**

18 U.S.C. § 1961 .......................................................................................... 5

N.Y. Judiciary Law § 219-d ........................................................................ 9

N.Y. Judiciary Law § 219-e ........................................................................ 9

N.Y.C. Admin. Code § 8-904 (2000) ........................................................ 12

N.Y.C. Admin. Code § 10-11 ............................................................ *passim*

**Rules**

CPLR § 214(5) .............................................................................................. 6

CPLR § 214-g ...................................................................................... *passim*

CPLR § 214-j ...................................................................................... *passim*

CPLR § 215(3) .............................................................................................. 6

Fed. R. Civ. P. 9(b) ............................................................................... 23, 24

**Regulations**

22 NYCRR § 202.72 .................................................................................... 9

**Other Authorities**

2019 N.Y. Sess. Laws ch. 11, § 3, eff. Feb. 14, 2019 ................................ 8

2020 NY. Sess. Laws, ch. 130, § 1, eff. Aug. 3, 2020................................ 8

Defendants Sean Combs ("Mr. Combs"), Bad Boy Entertainment Holdings, Inc. ("BBE"), and Sean John Clothing LLC ("SJC," and together with Mr. Combs and BBE, the "Combs Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("Compl.").  ECF No. 10

## PRELIMINARY STATEMENT

Plaintiffs' claims arise out of speculations as to what may have happened to her while attending a "Black Party," purportedly hosted by Mr. Combs in October 2006, nearly two decades ago.  Although the Amended Complaint is 70+ pages long (323 paragraphs) and begins with a gratuitous "trigger warning" claiming that the "document contains highly graphic information," it is notably devoid of any such information or indeed any factual allegations concerning what actually happened to Plaintiff or showing that the Combs Defendants were the cause.

Plaintiff claims to have been sexually assaulted and battered by Mr. Combs, "either directly or indirectly" through one or more unknown "agents and/or assigns," identified as "John and Jane Does 1 through 10."  Plaintiff alleges no interactions with Mr. Combs or any of Does 1–10 (whose true names, she alleges, may be "corporate, individual, or otherwise").  Nor does she provide any details whatsoever concerning the alleged assault and battery.  Indeed, Plaintiff alleges she has no memory of anything that happened to her at the party after she had two drinks.  She merely speculates that she was sexually assaulted by Mr. Combs ("either directly or indirectly through his agents and/or assigns") based on inferential leaps she takes off of vague and conclusory allegations about statements from an anonymous caller.

Plaintiffs' Complaint should be dismissed.  None of the claims are timely, as the statute of limitations for each of her claims has long since run.  To the extent Plaintiff relies on the revival provision in a 2022 amendment to New York City's Victims of Gender-Motivated Violence Protection Law (the "VGMPVL"), that attempt fails for several reasons.  Foremost is that the

1

revival provision is preempted by New York State law, as another court in this District (Judge Lewis A. Kaplan) has concluded now twice.  Furthermore, the revival provision does not apply to non-VGMVPL claims; nor does it apply retroactively to BBE or SJC, corporate entities that were not covered by the VGMVPL at the time of the alleged misconduct.  Meanwhile, Plaintiff fails to plead any basis for tolling of the statute of limitations.

Moreover, even if Plaintiff's claims were timely, and they are not, the Amended Complaint fails to plead sufficient facts to state a claim.  All of the claims should be dismissed because the factual allegations do not "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Given the absence of any factual allegation as to what actually happened to Plaintiff at the Black Party (let alone that Mr. Combs or one of his unidentified "agents and/or assigns" assaulted Plaintiff), the Complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557.  In addition, the claims suffer from numerous other fatal flaws, discussed further below.

Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice because each of the claims is time-barred and/or insufficiently pled.

## FACTUAL BACKGROUND

Plaintiff alleges that her sister won a radio contest, as a result of which her sister was awarded two tickets by Atlantic Records to attend a "Diddy White Party" (later changed to a "Black Party") in New York City in October 2006.  Compl. ¶¶ 77–85.  Plaintiff alleges she accompanied her sister to this party on October 16, 2006.  *Id.*  The Amended Complaint claims the party was promoted by Defendant KJAMZ and sponsored by Defendants Combs, Bad Boy Entertainment Holdings, Inc., Atlantic Records, and Delta Airlines,  but "was not a traditional 'White Party' thrown by Defendants Combs, . . . but a separate promotional party"; the image of a party invitation included in Plaintiff's pleading reflects Plaintiff's sister was invited to the party by Atlantic

Recording Corporation. *Id.* ¶¶ 77–83. Defendant Sean John Clothing is not alleged to have sponsored or promoted the party, but Plaintiff conclusorily alleges that Mr. Combs "was representing Sean John when he conspired to have Plaintiff assaulted" (while pleading no facts about any such assault or conspiracy). *Id.* ¶ 34. Sean John Clothing LLC was formed in 2014, roughly eight years *after* the events in question. *See* Declaration of Erica A. Wolff dated July 15, 2025 ("Wolff Decl.") Ex. A.[1]

Plaintiff packs the Amended Complaint with images purportedly reflecting that she, along with numerous "celebrities," in fact attended the party (including several irrelevant photos apparently taken from the internet). *Id.* ¶¶ 77–100. But noticeably absent are any allegations that Plaintiff ever interacted with Mr. Combs or any of the "John and Jane Does 1–10" she alleges may have assaulted her.

Plaintiff alleges that at the party she had two "premade drinks, provided by the waitresses," who were passing out the same drinks to every attendee, after which she began to "feel sick." *Id.* ¶ 103. She alleges that her "next memory" was awaking at the hospital, and that she has "no memory or no recollection on how she ended up at the hospital." *Id.* ¶¶ 104–105. She alleges her shirt was ripped, her underwear missing, she was not wearing shoes and her money stolen. *Id.* ¶ 106. She does not allege she was treated for a sexual assault, nor do the hospital record images included in the Amended Complaint reflect any such assault. *Id.*

---

[1]    The Court may take judicial notice of such public corporate records. *See Staehr v. Mack*, No. 07-CV-10368 (DAB), 2011 WL 1330856, at *6 n.5 (S.D.N.Y. Mar. 31, 2011) ("Courts may take judicial notice of a certificate of incorporation on a motion to dismiss."); *see also Lewis v. City of New York*, 762 F. Supp. 3d 290, 300 (S.D.N.Y. 2025) (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013)) (finding that a court may consider, *inter alia*, public records on a motion to dismiss).

Plaintiff alleges that the day after she returned home, she received a call from an anonymous female caller, who allegedly said "any attempts to pursue anything about Plaintiff's assault would be futile" because Mr. Combs was a "celebrity" and that Plaintiff would "just be wasting her time." *Id.* ¶ 115. She also alleges she experienced vaginal pain for approximately a week, but again alleges that she has "no memory of engaging in intercourse with anyone." *Id.* ¶ 119. She never sought medical treatment or otherwise reported the incident. *Id.* ¶ 120.

Although the Black Party took place in 2006, Plaintiff did not bring suit until December 20, 2024. ECF No. 1. On January 6, 2025, the Court ordered Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. ECF No. 4. On February 20, 2025, Plaintiff filed an amended complaint (ECF No. 8) and, after a filing issue, filed a corrected version of the operative Amended Complaint on February 26, 2025 (ECF No. 10).

As to the Combs Defendants, Plaintiff asserts the following causes of action ("COAs" and each a "COA"): (i) Violation of the Racketeer Influenced and Corruption Act ("RICO"), 18 U.S.C. § 1962 (COA 1); (ii) Assault and Battery (COA 2, against Mr. Combs only); (iii) Negligent Hiring, Training, Supervision and Retention (COA 4 and 5, against BBE and SJC, respectively); (iv) Negligence (COA 11); (v) NYC Victims of Gender-Motivated Violence Protection Law (COA 12); (vi) Negligent Infliction of Emotional District (COA 13); and Intentional Infliction of Emotional Distress (COA 14).

## ARGUMENT

## I.    ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED

The Amended Complaint should be dismissed with prejudice because all of Plaintiff's claims are time-barred. The Amended Complaint alleges a single incident that allegedly took place in October 2006. Plaintiff waited until December 2024—more than eighteen years after the alleged incident—to file this action, well past the statute of limitations for each of her claims.

"[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). "If it appears from a complaint that the claims are prima facie time-barred, the burden is on the plaintiff to 'plausibly alleg[e] that they fall within an exception to the applicable statute of limitations.'" *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 659 (S.D.N.Y. 2024) (quoting *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014)).

**A. The Applicable Statute of Limitations for Each of the Claims Has Expired.**

**RICO (COA 1):** The statute of limitations for a civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), is four years. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012). The four-year statute of limitations begins to run when plaintiff sustained her alleged injury or, if such injury was not known at that time, then from such date on which there were "sufficient 'storm warnings' to trigger the duty to inquire." *McKenzie v. Artists Rts. Soc'y, Inc.*, 757 F. Supp. 3d 427, 442–43 (S.D.N.Y. 2024) (citation omitted). Plaintiff alleges she became aware of her injury as of October 17, 2006. Compl. ¶ 107, 113. Thus, the RICO claim expired October 2010.

**Assault & Battery (COA No. 2) and Intentional Infliction of Emotional Distress ("IIED," COA 14):** "Under New York law, actions for intentional torts—including assault, battery, IIED and abuse of process—are subject to a one-year limitations period." *Tchatat v. City of New York*, No. 14-CV-2385 (LGS), 2015 WL 5091197, at *13 (S.D.N.Y. Aug. 28, 2015), *on reconsideration in part*, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015) (citing N.Y. C.P.L.R. §

215(3)).[2]  The claims accrue on the date of the alleged incident.  *See id.* at *14.  Thus, Plaintiff's

intentional tort claims expired in October 2007.

**Negligent Hiring/Supervision (COAs 4 and 5), Negligence (COA 11) and Negligent Infliction of Emotional Distress ("NIED," COA 13):** Under New York law, the statute of limitations for claims sounding in negligence—including negligent hiring/supervision and NIED—is three years.  *See* CPLR § 214(5); *Calamari v. Panos*, 131 A.D.3d 1088, 1090 (2d Dep't 2015) (three-year statute of limitations for negligent hiring/supervision); *Yong Wen Mo v. Gee Ming Chan*, 17 A.D.3d 356, 358 (2d Dep't 2005) (three-year statute of limitations for NIED).  Thus, Plaintiff's claims sounding in negligence expired in October 2009.

**NYC VGMVPL Claim (COA 15):** The statute of limitations under the VGMVPL is seven years after the alleged incident occurred.  *See* N.Y.C. Admin. Code § 10-1105(a).  Thus, Plaintiff's VGMVPL claims expired in October 2013.

## B. The VGMVPL Revival Provision Does Not Revive the VGMVPL Claim Because it Is Preempted

Plaintiff's attempt to circumvent the applicable statutes of limitation through the NYC VGMVPL (*see* Compl. ¶¶ 16–20) fails.  The 2022 amendment to the VGMVPL purports to revive any civil claim or cause of action "brought under this chapter that is barred because the applicable period of limitation has expired."  N.Y.C. Admin. Code § 10-1105 (the "VGMVPL Revival Provision").  However, the VGMVPL Revival Provision—a New York City local law—is preempted by New York State law which provides a conflicting, "comprehensive and detailed regulatory scheme" under the New York Child Victims Act, CPLR § 214-g ("CVA"), and the

---

[2]    New York statutes of limitations apply to the common law claims, regardless of whether the Court's subject matter jurisdiction is predicated on diversity or supplemental jurisdiction.  *See Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 137 (2d Cir. 2021) ("After all, it is beyond cavil that federal courts apply state limitations rules to state-law claims regardless of the jurisdictional circumstances.").

Adult Survivors Act, CPLR § 214-j ("ASA") for the revival of previously time-barred sexual assault claims. *See Parker v. Alexander*, No. 24-CV-4813 (LAK), 2025 WL 268436, at *2–3 (S.D.N.Y. Jan. 22, 2025) (holding VGMVPL's revival window is preempted by the CVA and ASA); *Bellino v. Tallarico*, No. 24-CV-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024) (same).

"Local laws may be . . . preempted by state law either because the legislature has occupied the relevant field of regulation," *i.e.*, field preemption, "or because the local law conflicts with state law," *i.e.*, conflict preemption. *Police Benevolent Ass'n of City of New York, Inc. v. City of New York,* 40 N.Y.3d 417, 423 (2023). As Judge Kaplan explained in *Parker*, both doctrines apply here.[3]

### 1. The CVA and ASA Occupy the Field of Revival of Sexual Offense Claims

Implicit field preemption occurs when the state legislature has "enacted a comprehensive and detailed regulatory scheme in a particular area." *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001) (citation omitted). Under such circumstances, the local government is "precluded from legislating on the same subject matter unless it has received 'clear and explicit' authority to the contrary." *Id.* The State's intent to occupy a field may be implied "from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area." *Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 377 (1989).

---

[3]     The preemption question presented in this Motion is currently before the Second Circuit in two separate appeals, *Parker v. Alexander*, No. 25-487 (2d Cir.) and *Doe v. Black*, 25-564 (2d Cir.) which have been ordered to proceed in tandem, *see Parker v. Alexander*, No. 25-487 (2d Cir.) at ECF No. 19.

When the New York State Legislature adopted the CVA and ASA, it recognized the goal of providing victims of sexual offenses an opportunity to seek redress for claims that had expired before they could be asserted; and it also recognized competing concerns about prosecuting stale claims, including the reliability of aged evidence, the due process rights of defendants,[4] and the burden on the judiciary. Balancing those competing the interests, the Legislature enacted the CVA in 2019 and the ASA in 2022, allowing previously time-barred claims for sexual offenses to be prosecuted even though they had expired, but only for a limited one-year window (extended an additional year for minors due to Covid) which expired on August 14, 2021 for alleged offenses against minors and on November 23, 2023 for alleged offenses against adults. CPLR § 214-g; 2019 N.Y. Sess. Laws ch. 11, § 3, eff. Feb. 14, 2019 (amended 2020); 2020 NY. Sess. Laws, ch. 130, § 1, eff. Aug. 3, 2020; CPLR § 214-j.[5]

Through its enactment of the CVA in 2019 and the ASA in 2022, the New York State Legislature impliedly occupied the entire field of claim revival for sexual offense-related claims, including the claims alleged by Plaintiff. The CVA and ASA constitute a comprehensive scheme: they "apply to *all* civil claims by child and adult victims for personal injuries arising from conduct constituting sexual offenses" and they each explicitly do so "notwithstanding" any limitations period "to the contrary." *Parker*, 2025 WL 268436, at *2 (emphasis added); CPLR §§ 214-g, 214-j. Further, the CVA and ASA are "detailed"; they "provide exact time frames during which claims

---

[4]     Statutes of limitations are a fundamental right of due process. As the New York Court of Appeals has explained, statutes of limitations "are designed to spare" a defendant "from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007) (dismissing claims on statute of limitations grounds) (citations omitted).

[5]     Thus, to the extent Plaintiff's intentional tort claims were revived by the ASA, that limited revival window closed in November 2023, over a year before Plaintiff filed this action.

may be brought." *Parker*, 2025 WL 268436, at *2.  Moreover, the timing of the ASA, which was

passed four months *after* the VGMVPL Revival Provision was enacted, confirms the legislature's

intent to preempt local New York City law, as "the state easily could have carved the [VGMVPL]

out of the ambit of the ASA" yet "opted not to do so."  *Id.* at *3.

Considering these provisions, Judge Kaplan concluded that the CVA and ASA are

"comprehensive" and "detailed" and therefore evince legislative intent to occupy the entire "field

of revival of civil claims arising from violations of state sexual offense penal statutes, preempting

local laws like the VGMVPL Revival Amendment to the extent that they purport to revive the

same category of claims." *Id.* at *2.

Additional measures, which Judge Kaplan did not explicitly consider, lend further support

to his conclusion that the ASA and CVA constitute a "detailed and comprehensive" regulatory

scheme.  For example, the New York State Legislature instructed the Chief Administrator of the

courts to promulgate rules for adjudicating revived actions brought pursuant to the CVA and the

ASA.   N.Y. Judiciary Law §§ 219-d, 219-e.   The state courts, in turn, implemented a

comprehensive infrastructure for litigating CVA cases, including the passage of Uniform Rule §

202.72 entitled "Actions Revived Pursuant to CPLR 214-g" which created a dedicated part of the

New York Supreme Court in each Judicial District to hear CVA cases, mandated training of

justices, hearing officers, and ADR neutrals in subjects related to sexual assault, and recommended

a uniform schedule for pre-trial proceedings in such cases which specified timeframes and intervals

for preliminary conferences, status conferences, discovery completion, dispositive motions, and

trial, and led to the issuance of global Case Management Orders governing the administration of all such cases.[6]  *See* 22 NYCRR § 202.72.

    2.   The VGMVPL Revival Provision Conflicts with the CVA and ASA

"[C]onflict preemption occurs when a . . . state law prohibits what a local law explicitly allows."  *Chwick v. Mulvey*, 81 A.D.3d 161, 168 (2d Dep't 2010).  The CVA and ASA revived previously time-barred VGMVPL claims for a limiting period, prohibiting such claims from being brought after August 13, 2021 (for claims by alleged child victims) or after November 23, 2023 (for claims by alleged adult victims).  CPLR §§ 214-g, 214-j.[7]  The 2022 amendment to the VGMVPL purported to permit the revival of all previously time-barred VGMVPL claims through February 28, 2025 (N.Y.C. Admin. § 10-1105(a)), that is, almost a year and a half longer than the state law deadline for adults, and more than three and half years longer than the state law deadline for minors.  Thus, on its face, the VGMVPL's Revival Amendment conflicts with the revival windows of the CVAs and the ASA, which are supposed to control "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary."  CPLR §§ 214-g, 214-j.

Because reviving expired claims is "an extreme exercise of legislative power," legislatures "act[] with deliberation and clarity when upsetting the strong public policy favoring finality, predictability, fairness and repose served by statutes of limitations."  *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal,* 35 N.Y.3d 332, 371–72 (2020) (citations omitted).

---

[6]    *See, e.g., In re: Child Victims Act NYC Litigation*, Supreme Court, Bronx, Kings, New York, Queens and Richmond Counties, Case Management Order No. 1, https://www.nycourts.gov/legacypdfs/courts/1jd/supctmanh/Rules/CVA-litigation.pdf  (Feb. 24, 2020).

[7]    The CVA and the ASA apply to expired VGMVPL claims.  *See, e.g.*, CPLR §§ 214-g, 214-j (applying to "every civil claim or cause of action . . . for . . . injury . . . suffered as a result of conduct which would constitute a sexual offense"); *S.A. v. Bell*, No. 950279/2021, 2023 WL 8653131, at *1 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023).

That is precisely what the New York State Legislature did in enacting the CVA and ASA. Allowing the VGMVPL Revival Provision to revive claims brought outside the CVA and ASA windows would impermissibly upset the clarity and uniformity that was carefully implemented by the New York State Legislature.

Thus, as Judge Kaplan has twice held, the CVA and ASA preempt the VGMVPL's Revival Provision, requiring dismissal of Plaintiff's VGMVPL claim as untimely.  *See Parker*, 2025 WL 268436, at *2–3; *Bellino,* 2024 WL 1344075 at *1.[8]

### 3.  In Any Case, the VGMVPL Revival Provision Only Applies to Claims Under the VGMVPL and Does Not Apply to Claims Against BBE and SJC

Even if the VGMVPL Revival Provision was not preempted by the CVA and ASA, it would only have limited application.  First, it would not apply to any non-VGMVPL claims.  On its face, the VGMVPL Revival Provision only applies to "any civil claim or causes of action *brought under this chapter* that is barred because the applicable period of limitations has expired."  N.Y.C. Admin. Code § 10-1105 (emphasis added).  Accordingly, it would not revive the other fourteen COAs asserted by Plaintiff that were not brought under the VGMVPL.

Second, the VGMVPL Revival Provision would not apply to any claims against BBE and SJC, as they are corporate entities, not individuals, and were not covered by the VGMVPL in 2006, when the alleged incident took place.  Under the VGMVPL as it existed in 2006, there was no

---

[8]     Judge Jessica G. L. Clarke issued two decisions rejecting the argument that the CVA preempts the VGMVPL.  *See Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 WL 4335453, at *3-7 (S.D.N.Y. Sept. 27, 2024); *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *2 (S.D.N.Y. Dec. 5, 2024) (incorporating by reference the decision in *Doe v. Black*).  Neither of those decisions substantively addressed, as *Parker* did, how the VGMVPL's Revival Provision could be given effect when it is inconsistent with the CVA and ASA's revival provisions. Moreover, as Judge Kaplan explained, Judge Clarke incorrectly minimized the CVA's scope by comparing it to other regulatory schemes she said were more comprehensive, but Judge Kaplan points out that those comparator schemes are simply "more *complex[]*," not more comprehensive. *Parker*, 2025 WL 268436, at *4.

claim against any person or entity other than "an *individual* who commits a crime of violence motivated by gender." N.Y.C. Admin. Code § 8-904 (2000) (emphasis added). Thus, there was "no civil claim or causes of action brought under this chapter" against BBE or SJC that could even arguably have been revived by the VGMVPL Revival Provision. N.Y.C. Admin. Code § 10-1105.

The premise of Plaintiff's reliance on the VGMVPL Revival Provision as to claims against BBE and SJC is that the 2022 amendments to the VGMVPL, which expanded liability to cover parties who "direct[ ], enable[ ], participate[ ] in, or conspire[ ] in" a crime of violence, retroactively apply to conduct that was lawful in 2006. But because "[r]etroactive operation is not favored by the courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it," *Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (2023) (cleaned up), and because neither by express language nor necessary implication are the 2022 amendments to the VGMVPL afforded retroactive effect, every single court to have considered the question of whether the 2022 VGMVPL amendment applies retroactively has confirmed it does not. *See, e.g.*, *S.S. v. Rockefeller Univ. Hosp.*, No. 159929/23, 2025 WL 1559583, at *1 (N.Y. App. Div. June 3, 2025) (holding that VGMVPL does not apply retroactively and dismissing entity defendant in case involving conduct predating 2022); *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *4 (S.D.N.Y. Dec. 5, 2024) (observing "the Court does not find sufficient evidence to overcome the presumption against retroactivity" and dismissing corporate defendants acccordingly). *See also* *Louis v. Niederhoffer*, No. 23-CV-6470 (LTS), 2023 WL 8777015, at *1 (S.D.N.Y. Dec. 19, 2023) (holding that the VGMVPL cannot be applied retroactively).

### C.  No Tolling Doctrine Applies to Save the Time-Barred Claims.

As the Combs Defendants have shown that the claims have expired, it is Plaintiff's burden to establish that the limitations period should be tolled. *Overall v. Est. of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995). Plaintiff offers no justification for her untimeliness. She alleges that the

anonymous caller in 2006 "threatened Plaintiff telling her that any attempts to pursue anything about Plaintiff's assault would be futile because Defendant Combs was a 'celebrity' and that Plaintiff would 'just be wasting her time.'" Compl. ¶ 115. Reading the Amended Complaint in the light most favorable to Plaintiff, the Amended Complaint at best potentially raises two different bases for equitable tolling under New York and federal law—duress and equitable estoppel. However, neither doctrine operates to toll Plaintiff's stale claims.

          1. <u>Duress</u>

The allegations in the Amended Complaint—that the anonymous caller "threatened Plaintiff telling her that any attempts to pursue anything about Plaintiff's assault would be futile"— do not come close to amounting to duress under New York law. Under New York law, duress must be "an element of the cause of action alleged" and requires "both threats or force by the defendant, and the submission of the plaintiff's free will to those threats. Both elements must continue in order for a duress-based tort to persist as a 'continuous wrong.'" *Overall*, 52 F.3d at 404. Duress cannot be invoked based on discrete instances of the defendant's conduct, but instead requires "a course of conduct involving threats or force that continued without interruption" from the time of the alleged incident until the time the action was brought. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019); *see Gilmore v. Combs et al.*, No. 24-CV-8440 (JPO), 2025 WL 1425326, at *4 (S.D.N.Y. May 16, 2025) (dismissing action as time-barred and rejecting Plaintiff's contention that alleged threats by defendant tolled the limitations period), *motion for relief from judgment denied*, 2025 WL 1548860 (S.D.N.Y. May 30, 2025).

Plaintiff fails to establish either element. Plaintiff fails to establish a continuous wrong because she does not "specify any acts by the defendant[s] occurring subsequent to [the alleged injury]" to meet her burden of "demonstrating continuing duress such as would toll the limitations period." *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 675 (2d Dep't 1994). Moreover, the

(implausible) allegation that this anonymous caller told Plaintiff that pursuing claims would be "futile" and "wasting her time" do not give rise to a plausible inference of a threat at all, let alone to an inference that Plaintiff's "submi[tted] . . . [her] free will" to such a "threat[]"—particularly a supposed submission that lasted more than eighteen years after the alleged threat. In other cases where plaintiffs alleged repeated instances of sexual abuse and brought claims, the Second Circuit made clear that a plaintiff's ongoing fear and emotional distress from abuse that has ended does not constitute "duress" for tolling. *See Overall*, 52 F. 3d at 405–406. General psychological stress based solely on an incident that occurred in 2006 does not establish duress. *See Adams v. Jenkins*, No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) ("There is no basis for equitably tolling the running of the statute based on general claims of psychological stress, even when allegedly caused by defendant.").

## 2. Equitable Estoppel

Under New York law, Equitable estoppel applies "when a defendant wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct." *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), *aff'd*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (summary order) (cleaned up). It is an "extraordinary remedy" to be "invoked sparingly and only under exceptional circumstances" where the defendant's affirmative misconduct caused the delay between the accrual and the filing of the plaintiff's claim. Equitable estoppel is "strikingly similar to the federal principle" of equitable tolling, which governs Plaintiff's federal claims. *See Diaz v. City Univ. of N.Y.*, No. 15-CV-1319 (PAC) (MHD), 2015 WL 13746673, at *6 (S.D.N.Y. Nov. 16, 2015), *report and recommendation adopted*, 2016 WL 958684 (S.D.N.Y. Mar. 8, 2016).

A plaintiff who invokes equitable estoppel must allege not only affirmative wrongdoing by the defendant that prevented filing, but also "due diligence" in bringing plaintiff's action when the

defendant's alleged wrongdoing "cease[d] to be operational." *Id.; see Simcuski v. Saeli*, 44 N.Y.2d 442, 449–450 (1978). As with duress, Plaintiff must establish that "specific actions by defendants" subsequent to the tortious conduct for which Plaintiff sues "somehow kept [plaintiff] from timely bringing suit." *Geiss*, 383 F. Supp. 3d at 172 (citation and quotation marks omitted). Further, Defendants' subsequent actions must "entail affirmative steps to prevent a plaintiff from bringing a claim." *Id.* (quotation marks omitted).

Here, Plaintiff does not and cannot point to any act, affirmative or otherwise, by the Defendants that prevented Plaintiff from filing suit. Nor does Plaintiff allege that the Defendants made any threats designed to prevent Plaintiff from filing suit.

Equitable estoppel cannot ordinarily be based on a plaintiff's fear of retaliation without more. As the Court explained recently in *Gilmore*, only one court in this District has "recognized the fear of retaliation as a basis for equitable tolling" and "that holding was based upon the reasoning that correction officers exert 'substantial control' over an inmate's daily life and so 'the specter of retaliation, a real and ever-present force in an inmate's life, can reasonably be said to be outside of an inmate-plaintiff's control." *Gilmore*, 2025 WL 1425326, at *4. Nothing in the Alleged Complaint comes close to rising to this level.

## II.    EVEN IF PLAINTIFF'S CLAIMS WERE TIMELY, THE AMENDED COMPLAINT FAILS TO STATE A CLAIM.

Even if Plaintiff's claims were timely, the Court should dismiss the Amended Complaint for failure to state a plausible claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are "consistent with" liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully. *Id.* at 678 (emphasis added). "[W]here the well-pleaded facts do not permit the court to infer *more than the mere possibility* of *misconduct*, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 680 (citation omitted) (emphasis added). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief *above the speculative level*.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (emphasis added).

"[A]s *Iqbal* makes clear, a plausible claim must come *before* discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 (CS), 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation'") (quoting *Iqbal*, 556 U.S. at 678–79).

### A. All Claims Fail to State a Claim Because the Factual Allegations Are Merely Speculative and/or Conclusory

The gravamen of the Amended Complaint is that Mr. Combs, "either directly or indirectly through his agents and/or assigns" sexually assaulted and battered Plaintiff. Compl. ¶¶ 185, 193. Each claim is indisputably predicated on this core accusation. *See, e.g.*, *id.* ¶ 159 (RICO); ¶ 185

(Assault and Battery); ¶¶ 201, 213 (Negligent Hiring/Supervision); ¶¶ 287–88 (Negligence); ¶ 295 (VGMVPL); ¶ 214 (NIED); and ¶ 320 (IIED).

Because Plaintiff has "no memory or no recollection" of what happened to her at the Black Party, however, she is unable to allege facts plausibly showing that Mr. Combs, "directly or indirectly through his agents and/or assigns," committed the sexual assault or battery. Indeed, even if the Court were to assume that *someone* sexually assaulted and battered Plaintiff that evening, Plaintiff fails to plead factual allegations that it was Mr. Combs, "directly or indirectly through his agents and/or assigns," who did so. Nor does the Amended Complaint provide any facts to support the proposition that the person(s) who allegedly assaulted Plaintiff was in fact Mr. Combs's "agent" or "assign." Plaintiff's allegations suggest that the Black Party was attended by hundreds of people. *See, e.g.*, Compl. ¶¶ 93–99; *id.* ¶ 78 (noting that the "White Parties" were legendary"). The factual allegations do not plausibly show that whoever assaulted Plaintiff (*if* she was assaulted) was either Mr. Combs or his "agent and/or assign." The allegations are merely speculative and conclusory; they do not come close to crossing the line from conceivable to plausible.

Plaintiff's alleged lack of memory as to what happened to her at the Black Party is not grounds for an exception to the pleading requirements. The New York state case of *O'Neill v. Wilder*, Index No. 712235/2018, (N.Y. Sup. Ct., Queens Cnty., November 15, 2018), whose dismissal was affirmed by the New York Appellate Division, is instructive. *See* Wolff Decl. Ex. B. In that case, the plaintiff alleged that she was drugged and raped by the defendant. *Id.* at *4. As to a claim for assault, the court found that where the "plaintiff allege[d] repeatedly in her complaint that she was unconscious for the alleged assault(s) and unable to feel apprehension or fear," she could not sustain the claim. *Id.* at *9 (to plead a cause of action for assault, a plaintiff must allege "intentional physical conduct placing the plaintiff in imminent apprehension of

harmful contact"). Likewise, as to a claim for battery, the court concluded that "it is clear that plaintiff only *speculates* that she was raped." *Id.* at 9–10 (emphasis added). It continued:

> As to the first date, January 6, 2017 the speculation arises from her developing a yeast infection five days thereafter. She pleads the following regarding the actual events of January 6, 2017: On that evening she went to a pizzeria near her home, she had two glasses of wine, returned home and had another two glasses of wine. She then states that the next thing she remembers is waking up on the ground, in the vestibule of the Supreme Court building on Queens Boulevard. There is nothing regarding rape save a question from a former colleague and the infection.

*Id.* at 10. After addressing similar allegations as to other instances of an alleged rape, the court observed: "All of the rape allegations are *entirely speculative and based on mere conjecture*. Plaintiff herself indicates that she was neither conscious for, nor has any recollection of the instances of alleged rape. Accordingly, plaintiff has not satisfied her burden in pleading intentionally offensive bodily contact." *Id.* at 12 (emphasis added).

The New York Supreme Court, Appellate Division, Second Department, affirmed, holding:

> Here, affording the complaint a liberal construction, accepting the facts alleged therein to be true, and granting the plaintiff the benefit of every possible favorable inference, we conclude that it fails to state a cause of action, as the core factual allegations and the purported involvement of the defendant are *based on mere speculation*.

*O'Neill v. Wilder*, 204 A.D.3d 823, 824, (2d Dep't 2022) (emphasis added).[9]

The core facts in this case are remarkably similar. Like the plaintiff in *O'Neill*, Plaintiff merely speculates that she was sexually assaulted without knowing what or who was involved in that "sexual assault." Because Plaintiff cannot allege "apprehension or fear" and cannot specifically allege any conduct that would qualify as offensive touching let alone a violation of

---

[9]    Notably, New York courts apply a "notice pleading standard" that is more liberal than the federal pleading standards of *Iqbal* and *Twombly*. *See, e.g.*, *Pressley v. City of New York*, 233 A.D.3d 932, 935 (2d Dep't 2024).

New York's penal code, Plaintiff has not sufficiently alleged the elements of either an assault or a battery claim. And, accordingly, all of the other claims in the Amended Complaint (upon which the allegations of sexual assault and battery are each necessarily predicated) are likewise insufficiently pled.

Plaintiff's vague allegation concerning the anonymous call does not change the result. "[A] district court reviewing a motion to dismiss is not required to credit conclusory allegations unsupported by facts." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020). Nor should it sustain allegations that, like this one, are utterly implausible. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous" if it relies upon factual allegations that are "fanciful, fantastic[] or delusional.") (quotation marks omitted). Here, even accepting Plaintiff's allegations about the anonymous caller to be true and drawing all reasonable inferences in Plaintiff's favor, the anonymous caller did not even accuse Mr. Combs (or any of his alleged "agents and/or assigns") of sexual assault, and to the extent Plaintiff purportedly inferred such accusations (and the Amended Complaint is hopelessly vague in this regard), such allegations are, at best, conclusory, speculative, and devoid of any facts.

Likewise, Plaintiff has not satisfied the pleading requirements of *Iqbal* and *Twombly* by referencing an unrelated, unadjudicated "35-page lawsuit" filed by Casandra Ventura (who she alleges is Mr. Combs's "long-time paramour"), other unadjudicated lawsuits "for the same conduct," and "various serious criminal charges" (the most serious of which have since resulted in a verdict of "not guilty"). *Sanfo v. Avondale Care Grp.*, LLC, No. 21-CV-7267 (KPF), 2022 WL 3448100, at *6 (S.D.N.Y. Aug. 17, 2022) ("It is well settled under Second Circuit law that allegations in a complaint 'that are either based on, or rely on, complaints in other actions that have

been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Rule 12(f).'") (collecting cases) (quoting *Low v. Robb*, No. 11-CV-2321 (JPO), 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012)).

Nor can she sustain claims against ten different Defendants she indiscriminately sued when she does not even attempt to parse out what each purportedly did, and instead lumps them all together in utterly conclusory, speculative, group pleadings. *See, e.g.,* Compl. ¶¶ 122 ("Defendants SJC, BBE, Atlantic, Crobar and KJAMZ . . . failed to protect [Plaintiff] despite creating, promoting and financing a contest . . ."; *id.* ¶ 133 (defining all Defendants as "RICO orchestrators" and attributing conduct to all of them collectively); *id.* ¶ 70 ("Upon information and belief, Plaintiff believes and thereon alleges that at all time relevant hereto each of the Defendant [ ] Does 1-10 were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of Defendants Combs, BBE, SJC, Atlantic, Delta, Crobar, PMC, Vibe, KJAMZ, Best Buy and/or Hotel"); *see also id.* ¶¶ 53, 134–35, 143, 145, 160, 290, 304, 311. Such group pleading is manifestly improper. *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [Plaintiff's] complaint failed to satisfy [Rule 8's pleading] standard."). Indeed, Defendant Sean John Clothing LLC, having been formed in 2014, did not even exist at the time Plaintiff alleges Comb was acting on its behalf (in 2006). *See* Wolff Decl. Ex. A. It is thus not surprising that Plaintiff would try to conceal the absence of a viable claim through group pleadings against twelve entities.

In short, the Amended Complaint's core allegation—that Mr. Combs, either directly or indirectly, committed the sexual assault and battery at issue—is entirely speculative and conclusory. Accordingly, it should be dismissed. And the speculative and conclusory nature of

the Amended Complaint is not limited to the core allegation that Mr. Combs sexually assaulted and battered Plaintiff.  It also pervades each of Plaintiff's underlying claims, which should be dismissed for the separate and independent reasons discussed further below.

### B.  The Amended Complaint Fails to State a RICO Claim (COA 1)

In her first COA, Plaintiff asserts a RICO claim against all three of the Combs Defendants together with the other Defendants.  The Complaint does not come close to pleading the requisite elements of RICO.  To state a cause of action under RICO, a plaintiff must plead: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Pu v. Charles H. Greenthal Mgmt. Corp.*, No. 08-CV-10084 (RJH), 2010 WL 774335, at *3 (S.D.N.Y. Mar. 9, 2010) (citation omitted).  A RICO plaintiff must also establish standing to sue, which is available only to a "'person injured in her business or property by' a RICO violation." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) (citation omitted).  "The phrase 'business or property'" excludes both "personal injuries suffered" and "the economic consequence of personal injuries." *Id.* (citations omitted).  The Complaint fails to plead the existence of a RICO "enterprise," a "pattern of racketeering," and Plaintiff's standing to sue.

#### 1.  The Complaint Fails to Plausibly Plead an "Enterprise"

First, to establish an "enterprise" via "association-in-fact," plaintiff must allege "hierarchy, organization, and activities" sufficient to show that the "members functioned as a unit." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (citation and quotation marks omitted).  The mere "conclusory naming of a string of entities does not adequately allege an enterprise." *Id.*  Here, Plaintiff conclusorily alleges that all Defendants constitute an enterprise, Compl. ¶ 140.  There are literally no factual allegations to support the

allegations of a RICO enterprise.  The Amended Complaint makes vague allegations but does not provide a coherent explanation of the structure of the alleged "enterprise" or how the members functioned as a unit.  *See, e.g.*, *id.* ¶ 143 ("The RICO Enterprise . . . was structured by various agreements, deals, contracts, and non-contractual relationships between the Defendants, by which Defendants assumed different roles in . . . participating in the acts necessary to carry out the directives of the Enterprise.").  These allegations fail to plead that any of the Combs Defendants participated in a "hierarchy, organization, and activities" from which to conclude that the RICO Defendants were part of a group that "functioned as a unit." *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) (holding that "simply group[ing] together all of the individuals and entities involved in the racketeering acts and call[ing] them an enterprise" constitutes no more than an "*ad hoc* collection of entities and individuals").

Second, the Complaint fails to allege the members of the alleged "enterprise" share a common, legally sufficient "purpose."  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).  Plaintiff alleges the enterprise's "purpose" is "to use deception, coercion, force, and the threat of violence to enrich [Defendants] at the expense of individuals like the Plaintiff." Compl. ¶ 145.  Plaintiff impermissibly conflates an enterprise's "purpose" with the alleged "pattern of racketeering."  *See Lynn v. McCormick*, No. 17-CV-1183 (CS), 2017 WL 6507112, at *5 (S.D.N.Y. Dec. 18, 2017) (finding no enterprise when the alleged purpose is to "engag[e] in the fraudulent activity that forms the basis of the asserted pattern of racketeering activity"), *aff'd*, 760 F. App'x 51 (2d Cir. 2019).  Furthermore, the purpose of "enrich[ing] Defendants" is insufficient because advancing self-interest cannot serve as a "purpose" as a matter of law. *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (no "enterprise" alleged without allegations defendants "acted 'on behalf of the *enterprise* as opposed to on behalf of themselves

in their individual capacities, to advance their individual self-interests'") (citation omitted). Without any discernable "structure" or "purpose," the Amended Complaint fails to allege a RICO "enterprise."

### 2. The Complaint Fails to Allege a Pattern of Racketeering

A "pattern of racketeering" requires two or more "predicate acts," *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017), which must be related. *Id.* at 60 (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989)). The Complaint fails to plead any "predicate act" let alone plead any with the requisite particularity required by Rule 9(b) in cases, where, as here, the predicate acts allegedly involve mail and wire fraud. *Entretelas Americanas S.A. v. Soler*, 840 F. App'x 601, 603 (2d Cir. 2020).

Plaintiff relies on fundamentally flawed allegations of mail and wire fraud, 18 U.S.C. §§ 1341, 1343, as the alleged "racketeering activity." Compl. ¶¶ 171–183. To adequately plead mail or wire fraud as "predicate acts," the Complaint must plead "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme," *United States v. Runner*, No. 24-1040, 2025 WL 1888317, at *4 (2d Cir. July 9, 2025), and must do so in accordance with the heightened pleading standard under Fed. R. Civ. P. 9(b). *See Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015). A plaintiff must also "identify the purpose of the mailing [or wire communication] within the defendant's fraudulent scheme." *Id.* (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir.1999) (alteration in original)).

The Complaint does not identify any specific fraudulent statements made in connection with any specific mailing or wire communication tied to any alleged fraudulent scheme, when such statements were made, and who made them. Instead, Plaintiff relies on speculation, vague conclusions, and improper group pleadings. *See, e.g.*, Compl. ¶ 142 ("Defendants . . . deceiv[ed] individuals such as Plaintiff under false pretenses"); *id.* ¶ 175 ("Defendants . . . distribute[d]

23

misleading advertisements to various states"). Such allegations fall far short of the minimum pleading requirements under Rule 9(b). *See, e.g.*, *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 526 (E.D.N.Y. 2011) ("[P]laintiffs have failed to identify which defendants caused each allegedly fraudulent statement to be spoken, written, or mailed; what the content of the allegedly fraudulent misrepresentation was; or when the communication was made"); *D. Penguin Bros. v. City Nat'l Bank*, No. 13-CV-0041 (TPG), 2014 WL 982859, at *6 (S.D.N.Y. Mar. 11, 2014), *aff'd*, 587 F. App'x 663 (2d Cir. 2014) (same).

### 3. Plaintiff Lacks RICO Standing

To confer standing to sue, the alleged RICO "predicate act" must be both the "but for" and proximate cause of an alleged injury to "business or property." *Geiss*, 383 F. Supp. 3d at 170–71 (no RICO standing for injuries allegedly caused by "blacklisting" because "[b]lacklisting . . . is not a RICO violation"); *DeSilva*, 770 F. Supp. 2d at 523–24 (no RICO standing for alleged "wage theft" caused "simply [by] the retention of plaintiffs' wages"). "The phrase 'business or property'" excludes both "personal injuries" and "the economic consequence of personal injuries," *Geiss,* 383 F. Supp. 3d at 170, which are the only injuries alleged in this lawsuit. *See* Compl. ¶¶ 119–129. Plaintiff does not allege a single fact supporting a plausible inference of injury to her "business or property." She merely asserts such injury by conclusion, without support. *See* Compl. ¶ 181. Because there is no non-conclusory alleged injury to "business or property" caused by a RICO "predicate act," Grayson lacks RICO standing and her RICO claim must be dismissed. *See Jones v. Combs,* No. 24-CV-1457 (JPO), 2025 WL 896829, at *4–6 (S.D.N.Y. Mar. 24, 2025) (dismissing RICO claim).

### C.  The Amended Complaint Fails to Plead Claims for Negligent Hiring/Supervision (COAs 4–10), Negligence (COA 11) or NIED (COA 13).

Plaintiff's causes of action for negligent hiring/supervision (COAs 4–10), negligence (COA 11), and NIED (COA 13) should be dismissed because the Complaint fails to show how each Defendant, including the Combs Defendants, named in these causes of action owed Plaintiff a duty or how any Defendant breached any such duty.  Claims sounding in negligence require the pleading of a duty and a breach of that duty.  *See Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016).  And a claim for negligent hiring, retention, or supervision carries an additional requirement that "the employer was on notice of the relevant tortious propensities of the wrongdoing employee."  *Gomez v. City of New York*, 304 A.D.2d 374, 374 (1st Dep't 2003).  As to the Combs Defendants, there are no non-conclusory allegations of duty or notice anywhere in the Complaint.  *See, e.g.* Compl. ¶ 20 (illogically and improperly alleging all "Defendants were put on notice" because of "media coverage of the criminal trial . . . and civil lawsuits . . . against Defendant Combs" twenty years *after* the event in question); *id.* ¶¶ 285–86 (alleging in improper, conclusory, group pleadings that "[e]ach Defendant  . . . owed Plaintiff a duty of care" and "breached" it); *id.* ¶¶ 200–223 (boilerplate recitations devoid of facts).[10]  The Complaint utterly fails to plead the essential elements in any claim sounding in negligence.

### D.  The Claims for NIED (COA 13) and IIED (COA 14) Should Be Dismissed As Duplicative.

Under New York law, causes of action for emotional distress are "not allowed if essentially duplicative of tort or contract causes of action."  *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 637, 713 N.Y.S.2d 171, 172 (2000) (holding that lower court should have denied plaintiff's motion to

---

[10]  The Amended Complaint asserts seven different causes of action for "Negligent Hiring, Training, Supervision and Retention" against seven different corporate Defendants, each of which contain identical boilerplate allegations. *See* Fourth – Tenth Causes of Action.

added NIED claim); *Turley v. ISG Lackawanna Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (noting that the New York Court of Appeals has "cautioned that a claim for IIED may not be sustainable where the conduct complained of falls well within the ambit of other traditional tort liability") (citation and quotation marks omitted); *see also Kimberly Stines v. Alvaro Sanchez*, No. 21-CV-7884 (DEH), 2025 WL 1435067, at *5 (S.D.N.Y. May 19, 2025) ("Ms. Stines cites no facts serving to distinguish her IIED claim from her other tort claims—her IIED claim is completely coextensive with her assault and battery claims. . . .  Therefore, this claim fails."); *Mahn v. Allegis Grp., Inc.*, No. 24-CV-8326 (GHW), 2025 WL 1504812, at *18 (S.D.N.Y. May 24, 2025) (dismissing both NIED and IID claims as duplicative of other tort claims).

Here, Plaintiff's claims for NIED and IIED are likewise entirely duplicative of her claim for assault and battery. *See, e.g.*, Compl. ¶ 313–323.  Those claims should therefore be dismissed as duplicative.

## E.  The Amended Complaint Fails to State a VGMVPL Violation Against BBE and SJC (COA 12)

The Amended Complaint fails to state a VGMVPL violation against BBE and SJC for the reasons set forth in Section I.B.3 above.  At the time of the alleged conduct, the VGMVPL did not apply to corporate entities, and the 2022 amendment does not apply retroactively.  *See, e.g.*, *S.S. v. Rockefeller Univ. Hosp.*, No. 159929/23, 2025 WL 1559583, at *1 (N.Y. App. Div. June 3, 2025) (dismissing VGMVPL claim against corporate entity where conduct at issue allegedly occurred prior to the 2022 amendment because 2022 amendment to VGMVPL does not apply retroactively); *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *4 (S.D.N.Y. Dec. 5, 2024) (same).

## <u>CONCLUSION</u>

For all the reasons set forth above, the Coms Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice and grant such other and further relief as the Court deems proper and just.

Dated: July 15, 2025
      New York, New York

Respectfully submitted,

SHER TREMONTE LLP

By:    */s/ Erica A. Wolff*
      Erica A. Wolff
      Michael Tremonte
      Michael Bass
      90 Broad Street, 23rd Floor
      New York, NY 10004
      (212) 202-2600
      ewolff@shertremonte.com
      mtremonte@shertremonte.com
      mbass@shertremonte.com

*Attorneys for Defendants Sean Combs, Bad Boy Entertainment Holdings, Inc., and Sean John Clothing LLC*

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned counsel of record for the Combs Defendants certifies that the foregoing

brief complies with the 8,750-word limit set forth in Rule 7.1(c) of the Local Rules of the United

States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") and

in Rule 5(A) of the Individual Rules and Practices in Civil Cases of the Hon. Jeannette A. Vargas

(the "Individual Rules"). The foregoing brief contains 8,712 words, excluding those portions of

the brief excluded from the count by Local Rule 7.1(c) and Individual Rule 5(A), according to the

Word Count feature on Microsoft Word.


Dated: July 15, 2025
        New York, New York

                                      _*/s/  Erica A. Wolff*_

                                        Erica A. Wolff