# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Product Liability Litigation*,
  597 F.Supp. 740 (E.D.N.Y. 1984) ..................................................................11

*A & E World Grp., Inc. v. Wextron, Inc.*,
  No. 85-cv-3867, 1987 WL 8403 (E.D.N.Y. Mar. 13, 1987) ...................................16

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ..........................................................................21

*Anonymous v. Simon*,
  No. 13-CV-2927, 2014 WL 819122 (S.D.N.Y. Mar. 13, 2014) ............................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................5, 6, 25

*Atuahene v. City of Hartford*,
  10 Fed. Appx. 33 (2d Cir. 2001) .................................................................5, 16

*Automated Teller Mach. Advantage LLC v. Moore*,
  No. 08-CV-3340, 2009 WL 2431513 (S.D.N.Y. Aug. 6, 2009) .............................18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................5, 6, 23, 25

*Bensky v. Indyke*,
  743 F.Supp.3d 586 (S.D.N.Y. 2024) ........................................................12, 13

*Beter v. Baughman*,
  24-CV-0079, 2024 WL 1333570 (S.D.N.Y. Mar. 13, 2024) ............................23, 24

*Breest v. Haggis*,
  180 A.D.3d 83 (1st Dept. 2019) .....................................................................14

*Burrowes v. Combs*,
  312 F.Supp.2d 449 (S.D.N.Y. 2004) ................................................................7

*Capak v. St. Execs Mgmt.*,
  No. 20-CV-11079, 2021 WL 2666007 (S.D.N.Y. June 29, 2011) .........................23

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ...................................................................................17

*DeFalco v. Bernas*,
   244 F.3d 186 (2d Cir. 2001)...............................................................................15

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
   924 F.Supp. 449 (S.D.N.Y. 1996) ......................................................................19

*Diego Beekman Mutual Housing Ass'n Housing Dev't Fund Corp. v. Dish
   Network, LLC*,
   15-CV-1094, 2016 WL 1060328 (S.D.N.Y. Mar. 15, 2016)..................................22

*Discon, Inc. v. NYNEX Corp.*,
   93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998)......................20

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987)................................................................................21

*Doe v. Alsaud*,
   12 F.Supp.3d 674 (S.D.N.Y. 2014) ......................................................................23

*Doe v. Combs*,
   No. 23-CV-10628, 2024 WL 4987044 (S.D.N.Y. 2024).................................12, 13

*Doe v. Gross*,
   No. 23-CV-6325, 2024 WL 3729007 (S.D.N.Y. Aug. 7, 2024)............................14

*Eckhart v. Fox News Network, LLC*,
   No. 20-CV-5593, 2021 WL 4124616 (S.D. N.Y. Sep. 9, 2021)............................14

*EEOC v. Port Auth. of N.Y. & N.J.*,
   768 F.3d 247 (2d Cir. 2014)....................................................................................6

*Engelman v. Rofe*,
   194 A.D.3d 26 (1ˢᵗ Dept. 2021)..........................................................................14

*Fahs Const. Grp., Inc. v. Gray*,
   No. 10-CV-0129, 2012 WL 2873534 (N.D.N.Y. July 12, 2012) ...........................22

*First Nationwide Bank v. Gelt Funding Corp.*,
   820 F.Supp. 89 (S.D.N.Y. 1993)......................................................................17, 19

*Freund v. Lerner*,
   No. 09-CV-7117, 2010 WL 3156037 (S.D.N.Y. Aug. 7, 2010)............................17

*Ghartey v. St. John's Queens Hosp.*,
   869 F.2d 160 (2nd Cir. 1989)..................................................................................7

*Goren v. New Vision Int'l, Inc.*,
   156 F.3d 721 (7th Cir. 1998) ...............................................................................15

*Gottwald v. Sebert*,
    40 N.Y.3d 240 (2023) ................................................................................................10

*Greenberg v. Blake*,
    No. 09-CV-4347, 2010 WL 2400064 (E.D.N.Y. June 10, 2010) ...........................17

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)......................................................................................5

*Hopkins v. Lincoln Trust Co.*,
    233 N.Y. 213 (1922) ................................................................................................11

*Hopper v. Banana Republic, LLC*,
    No. 07-CV-8526, 2008 WL 490613 (S.D.N.Y. Feb. 25, 2008)........................22, 24

*Leonhard v. United States*,
    633 F.2d 599 (2d Cir. 1980)......................................................................................7

*Lesavoy v. Lane*,
    304 F.Supp.2d 520 (S.D.N.Y. 2004)........................................................................15

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)......................................................................................20

*Mallard v. United States Dist. Ct.*,
    490 U.S. 296 (1989)............................................................................................2, 15

*Manhattan Telecomms. Corp. v. DialAmerica Mktg, Inc.*,
    156 F.Supp.2d 376 (S.D.N.Y. 2001)........................................................................19

*McDougald v. Garber*,
    73 N.Y.2d 246 (N.Y.1989) ......................................................................................10

*Michael Fiorito v. Metropolitan Council, et al.*,
    No. 25-cv-213-DSD-DJF (D. Minn. April 7, 2025) (order attached as **Exhibit
    1**) ........................................................................................................................2, 3

*Moore v. PainWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999)....................................................................................21

*Mortise v. United States*,
    102 F.3d 693 (2d Cir. 1996)....................................................................................24

*Moy v. Terranova*,
    No. 87-CV-1578, 1999 WL 118773 (E.D.N.Y. Mar. 2, 1999)................................18

*New York v. Utd. Parcel Serv., Inc*,
    15-CV-1136, 2016 WL 4203547 (S.D.N.Y. Aug. 9, 2016)....................................19

*Pasternack v. Lab Corp. of Am.*,
  892 F.Supp.2d 540 (S.D.N.Y. 2012) ........................................................................22

*Randolph v. CIBC World Mkts.*,
  219 F.Supp.2d 399 (S.D.N.Y. 2002) ..........................................................................7

*RD Mgmt. Corp. v. Samuels*,
  No. 02-CV-4876, 2003 WL 21254076 (S.D.N.Y. May 29, 2003) ...........................19

*Reves v. Ernst & Young*,
  507 U.S. 160 (1993) ................................................................................18, 19, 20

*Rosner v. Bank of China*,
  528 F.Supp.2d 419 (S.D.N.Y. 2007) .......................................................................19

*Rotella v. Wood*,
  528 U.S. 549 (2000) ..................................................................................................7

*S.H. v. Diocese of Brooklyn*,
  205 A.D.3d 180 (2nd Dept. 2022) ...........................................................................11

*Salinas v. U.S.*,
  522 U.S. 52 (1997) ...................................................................................................20

*Schmidt v. Fleet Bank*,
  16 F.Supp.2d 340 (S.D.N.Y. 1998) .........................................................................16

*Sedima S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) .................................................................................................15

*Singh v. Parnes*,
  199 F.Supp.2d 152 ...................................................................................................18

*Spira v. Nick*,
  876 F.Supp. 553 (S.D.N.Y. 1995) ...........................................................................16

*Stagl v. Delta Air Lines, Inc.*,
  52 F.3d 463 (2d Cir. 1995) ......................................................................................22

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
  303 F.Supp.2d 432 (S.D.N.Y. 2004) .......................................................................16

*United States v. Pizzonia*,
  577 F.3d 455 (2d Cir. 2009) ....................................................................................20

*United States v. Turkette*,
  452 U.S. 576 (1981) ...........................................................................................16, 17

*Vaccaro v. Bank of America, N.A.*,
    No. 13-CV-2484, 2016 WL 4926201 (S.D.N.Y. Sept. 15, 2016)..............................................7

*Vincent v. Money Store*,
    915 F.Supp.2d 553 (S.D.N.Y. 2013)........................................................................................7

*Walters v. Indus. & Commercial Bank of China, Ltd.*,
    651 F.3d 280 (2d Cir. 2011)....................................................................................................7

*Whitehead v. Pine Haven Operating LLC*,
    222 A.D.3d 104 (3rd Dept. 2023) ..........................................................................................10

*Wight v. BankAmerica Corp.*,
    219 F.3d 79 (2d Cir. 2000)......................................................................................................21

**Statutes**

18 U.S.C.
    § 1961 (4)..........................................................................................................................16, 17
    § 1962...................................................................................................................6, 7, 15, 20
    § 1962 (c) ...............................................................................................................................15
    § 1962(d).........................................................................................................................15, 20

RICO ..................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ...........................................................................................................................5

Fed. R. Civ. P. 9(b) ..............................................................................................................21, 25

Fed. R. Civ. P. 11 .........................................................................................................................2

Fed. R. Civ. P. 12(b)(6)................................................................................................... *passim*

N.Y.C. Admin. Code
    § 8-901 et seq. (2000) ...............................................................................................................8
    § 8-904 (2000).......................................................................................................................8, 9
    § 8-905 (2000).......................................................................................................................7, 8
    § 10-1101 et. seq. ..................................................................................................................7, 8
    § 10-1104 ........................................................................................................................9, 13, 23
    § 10-1105 ......................................................................................................................8, 10, 13

N.Y.C.P.L.R.
    § 201......................................................................................................................................7
    § 214......................................................................................................................................7
    § 215(3)..................................................................................................................................7

New York City Administrative Code Title 10 Chapter 11 ..........................................................14

Transcript of Stated Meeting of New York City Council, Dec. 9, 2021 (available
    at
    https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=
    BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993&Options=&Search=), pp.
    165-166 ...........................................................................................................................11

## PRELIMINARY STATEMENT

Defendant Delta Air Lines, Inc. ("Delta") respectfully submits this Memorandum of Law in support of its motion to dismiss the Second Amended Complaint ("SAC"), ECF 87. Delta should never have been included in this litigation, and it should be dismissed at this time. The terrible experience recounted by Plaintiff LaTroya Grayson ("Plaintiff") allegedly occurred in October of 2006, and had nothing to do with Delta: an entity that, at most, only provided commercial passenger air transportation to Ms. Grayson.  It is frivolous for Plaintiff's counsel to involve Delta in this case as a 'deep pocket' defendant, and it does nothing to alleviate the harm to Plaintiff in 2006.

According to the SAC, Plaintiff was assaulted by the singer Sean Combs ("Combs") and/or his associate[s] at an October 2006 "Black Party" Combs hosted in New York City. In addition to the claims Plaintiff states against Combs and her alleged assailants, Plaintiff has attempted to name several other persons and commercial entities, including Delta, seemingly because she allegedly crossed paths with these entities while she traveled to New York for the party.

Delta's only alleged involvement in this matter is that Plaintiff was a passenger on two commercial Delta flights between Oklahoma and New York. Even taking the allegations in the SAC as true, Plaintiff has failed to state a claim upon which relief can be granted against Delta, and the claims she attempts to state – alleging (without foundation) acts and omissions from more than eighteen years ago – are well outside their respective statutes of limitations. Consequently, Rule 12(b)(6) requires dismissal of this lawsuit as against Delta. Following Delta's First Motion to Dismiss [ECF 45], and in accordance with the Court's practices, Plaintiff filed the SAC. That SAC only added two new allegation referencing Delta, in Paragraphs 92 and 295—and both were merely conclusory and legally deficient "lumping" allegations that simply added the name Delta

to a group allegation with no specificity as to Delta's acts or omissions. These do not as a matter of law change the analysis.

Because the allegations in the SAC are nearly two decades old and the claims have not been revived, this Memorandum of Law will first explain why Plaintiff's claims are clearly barred by their respective statutes of limitations. The statute of limitations bar is not only required under applicable law but also the only fair way to proceed against an innocent third-party such as Delta, which should not be required to defend claims from ordinary air transportation almost nineteen years ago. Even assuming that the claims against Delta were timely (which they are not), the SAC contains zero factual or legal basis for naming Delta in this lawsuit. Delta is a premier global airline that, according to the SAC, committed the unremarkable act of providing commercial air transportation to Plaintiff to and from New York City in 2006. To use that one factual kernel to then group Delta with other Defendants in a case alleging sexual assault by a celebrity unaffiliated with Delta is the architype of impermissible group pleading. Delta should be dismissed.

Delta has strong legal arguments for dismissal under Rule 12(b)(6) that are based on long-established precedent, and none of the allegations, including the two new ones, pleads anything to bring this case outside that precedent. Such shotgun approaches, that have no legal basis in law or a reasonable extension of the law, are frivolous and not countenanced by Rule 11 of the Federal Rules of Civil Procedure. Separate from and independent of Rule 11, the Court should exercise its inherent power to dismiss frivolous claims. *See Mallard v. United States Dist. Ct.*, 490 U.S. 296, 307-08 (1989). In a federal case recently filed against Delta, the District of Minnesota dismissed with prejudice claims against Delta for failing to maintain elevators and escalators at a light rail station that it did not operate on the grounds that the claims were "on their face, frivolous or malicious." *Michael Fiorito v. Metropolitan Council, et al.*, No. 25-cv-213-DSD-DJF, at 4 (D.

2

Minn. April 7, 2025) (order attached as **Exhibit 1**). The court stated that the plaintiff's theory for including Delta was "facially absurd – so absurd, in fact, that the court doubts that the claims against the airlines were brought by [the plaintiff] with a good-faith belief that those claims would prove to be meritorious. Instead, it is overwhelmingly likely that Delta Airlines [sic] and Sun Country Airlines have been named by [the plaintiff] to this lawsuit only because those defendants have greater resources than the Metropolitan Council (which operates the light rail station at issue) and because [the plaintiff] hoped those defendants might prefer to pay the costs of a settlement rather than defendant [sic] against his frivolous claims." *Id.*

The *Fiorito* court's logic holds true here. The gravamen of Plaintiff's theory of liability against Delta is that Plaintiff used Delta's commercial air travel services to fly for a trip eighteen years ago, and between her outbound and return flights, she was the victim of a crime at the event for which she traveled. This theory is so "facially absurd" that counsel could not have held a good faith belief that the claims "would prove to be meritorious." *Id.;* Rule 11, Fed. R. Civ. P.  Rather, "it is overwhelming likely that Delta" was named solely because of its perceived ability to pay and in the hope that Delta "might prefer to pay the costs of a settlement rather than [defend] against [the] frivolous claims." *Id.*

## <u>PROCEDURAL HISTORY</u>

Plaintiff filed this lawsuit, which arises out of events alleged to have occurred in October of 2006, on December 20, 2024. (ECF 1). On January 5, 2025, the Court ordered Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. (ECF 7). On February 20, 2025, Plaintiff amended her Complaint (ECF 8) and after a filing issue, a corrected version of Plaintiff's First Amended Complaint was filed on February 26, 2025. (ECF 10). Delta filed an executed waiver of service on March 7, 2025. (ECF 12). Delta filed its motion to dismiss

on April 15, 2025, ECF 45, but Plaintiff failed to respond by the Court-imposed deadline of July 3, 2025 (ECF 61). On July 20, 2025, Plaintiff filed her Second Amended Complaint [ECF 87], which did not materially change the allegations involving Delta. On July 22, 2025, the Court issued a new schedule for briefing the motion to dismiss. ECF 89.

## STATEMENT OF FACTS

The allegations against Delta itself are entirely lacking in specificity, other than the assertion that Plaintiff was a passenger on Delta flights when she traveled to New York. The events forming the basis of Plaintiff's lawsuit are all alleged to have occurred on October 16 and 17 of 2006, more than eighteen years before the filing of the original complaint on December 20, 2024. (ECF 87 ¶ 84). Delta is referenced only as an airline operator that issued tickets for Plaintiff to fly between Oklahoma and New York. (*Id.* ¶¶ 43-45). The SAC asserts that "Plaintiff was provided a plane ticket, issued by Delta, for departure on October 16, 2006 from Tulsa to New York JFK airport returning to Tulsa the next day on October 17, 2006." *Id.* ¶ 85. Plaintiff does not – and cannot – allege with any specificity or factual support that Delta knew of Combs' illicit activities or intended to participate in them.

Nonetheless, Plaintiff alleges "The surface purpose of the radio contest and the 'black party' was to promote a joint venture of Defendant Comb's new album 'Press Play' his cover on Vibe Magazine and was funded by his partnerships with various others including Defendants Crobar, BBE, SJC, Atlantic, Delta and Best Buy." ECF 87 ¶ 92. Plaintiff further alleges that "Defendants Delta and Hotel enabled Defendant Combs' commission of the crimes of violence motivated by gender, by engaging in a scheme to transport and house unknowing victims to a place where they would be at risk of physical harm by Defendant Combs' or Does and thus, are liable under the NYC Victims of Gender-Motivated Protection Act." *Id.* ¶ 295.

Based on these cursory and generalized allegations, Plaintiff attempts to plead several claims against Delta arising out of events alleged to have occurred at and immediately after the Black Party. But as set forth below, the limitations periods for each of Plaintiff's claims lapsed years ago. In addition, the SAC fails to state a claim against Delta with regard to the various legal theories. As a result, Delta respectfully requests that the Court dismiss it from this case with prejudice.

## **LEGAL STANDARD**

Under Fed. R. Civ. P. 12(b)(6), a claim can be dismissed for failure to state a claim upon which relief may be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice to survive a motion to dismiss under Rule 12(b)(6). *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). A complaint must do more than proffer "an unadorned, the defendant unlawfully harmed me accusation." *Id.* at 679. Rather, after all conclusory allegations are pared from the complaint, the well pleaded factual allegations must plausibly entitle the plaintiff to relief. *Id.* at 678-79; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

Simply including Delta in a "group pleading" in which it is lumped together with other defendants is insufficient to satisfy federal pleading requirements. *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001). Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon

which it rests." *Id.*; Fed. R. Civ. P. 8. A plaintiff cannot meet this standard, "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Id.* The two new allegations, on top of the other group pleadings, do not solve the legal issue raised in Delta's response to Plaintiff's first amended complaint. The legal impediment has not been, and cannot be, cured.

The Second Circuit has confirmed that the *Iqbal/Twombly* standard requires that a claim be dismissed unless a court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although prior standards required a complaint to *preclude* the viability of claims to be dismissed, *Twombly* and *Iqbal* now require something more affirmative, namely "that a complaint *support* the viability of its claims by pleading sufficient nonconclusory factual matter to set forth a claim that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678) (emphasis in original). Reviewing a complaint for plausibility is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 258 (quoting *Iqbal*, 556 U.S. at 679). If a complaint lacks sufficient factual allegations to raise a plaintiff's claims "above the speculative level," the claims must be dismissed as a matter of law. *Id.* at 257 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT & CITATION TO AUTHORITY

## I.    THE GENDER-MOTIVATED VIOLENCE PROTECTION LAW DID NOT REVIVE PLAINTIFFS' CLAIMS, AND AS A RESULT, THEY MUST BE DISMISSED AS TIME-BARRED BY THE RELEVANT STATUTES OF LIMITATIONS.

Plaintiff attempts to allege claims against Delta for violation of 18 U.S.C. § 1962, negligence, negligent infliction of emotional distress, and violation of the GVPL. ECF 87. Because more than eighteen years elapsed between the Black Party and Plaintiff's suit, the relevant

limitations periods had long passed when Plaintiff filed suit. Since Plaintiff's claims are past their respective limitations periods, Plaintiff's claims against Delta must be dismissed under Federal Rule of Civil Procedure 12(b)(6). *See Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2nd Cir. 1989). In fact, a district court may dismiss an action on statute of limitations grounds *sua sponte* where the facts supporting the defense appear in the plaintiff's own pleadings. *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (quoting *Leonhard v. United States*, 633 F.2d 599, 609, n.11 (2d Cir. 1980)).

In New York in 2006, claims for negligence and negligent infliction of emotional distress were subject to a three-year statute of limitations, and claims for intentional infliction of emotional distress were subject to a one-year statute. N.Y.C.P.L.R. § 214 and N.Y.C.P.L.R. § 215(3). These limitations periods begin to run on the date of a plaintiff's alleged injury. *See, e.g., Vaccaro v. Bank of America, N.A.*, No. 13-CV-2484, 2016 WL 4926201, at *6 n.12 (S.D.N.Y. Sept. 15, 2016). Federal courts apply state statutes of limitations in diversity matters. *Vincent v. Money Store*, 915 F.Supp.2d 553, 562 (S.D.N.Y. 2013). By statute in New York, "[n]o court shall extend the time limited by law for the commencement of an action," and courts are "expressly prohibited" from extending statutes of limitations. N.Y.C.P.L.R. § 201; *Randolph v. CIBC World Mkts.*, 219 F.Supp.2d 399, 402 (S.D.N.Y. 2002). Federal claims for violation of 18 U.S.C. § 1962 are subject to a four-year statute of limitations, which "begins to run when the plaintiff is injured or discovers his injury, regardless of when the racketeering activity that caused the injury is discovered." *Burrowes v. Combs*, 312 F.Supp.2d 449, 451 (S.D.N.Y. 2004) (citing *Rotella v. Wood*, 528 U.S. 549, 554-59 (2000)). In 2006, GVPL claims – which could not be brought against entities at that time – were subject to a seven-year limitations period. N.Y.C. Admin. Code § 8-905 (2000)[1]. Here,

---

[1] A recodification in 2018 moved the GVPL to N.Y.C. Admin. Code § 10-1101 et. seq.

the limitations periods for each of Plaintiff's claims against Delta began to run on, at the latest, October 17, 2006, meaning they had each long expired when she filed this case in December 2024.

Plaintiff alleges that, notwithstanding the expired limitations periods, amendments to the New York City Gender-Motivated Violence Protection Law ("GVPL") enacted in 2022 revive any claim related to sexual assault against any entity, regardless of what claim is brought or what kind of party is sued. This is a legally incorrect reading of the GVPL amendments for two reasons. First, the 2022 amendments did not and could not have revived claims against entities other than the individual perpetrators of a crime, since, in 2006, the GVPL did not create any claim against such entities. Second, the GVPL's revival window did not and could not have revived any claims for RICO, negligence, or other torts, since the GVPL does not determine statutes of limitations for other claims. Simply put, because Delta is not – and is not alleged to be – a perpetrator of any crime, the 2022 amendments cannot salvage any of Plaintiff's claims against Delta.

The GVPL was enacted in 2000 and amended in 2022. N.Y.C. Admin. Code § 8-901 et seq. (2000); N.Y.C. Admin. Code § 10-1101 *et seq*. (2022). Before 2022 – including at the time of the Black Party – the GVPL created a cause of action against "an *individual* who commits a crime of violence motivated by gender" for relief, including without limitation compensatory and punitive damages. N.Y.C. Admin. Code § 8-904 (2000) (emphasis added). That original version imposed a seven-year statute of limitations. N.Y.C. Admin. Code § 8-905 (2000).

The 2022 amendments expanded the law in two ways. First, the amendments instituted a revival window for plaintiffs to file otherwise stale claims:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

N.Y.C. Admin. Code § 10-1105. Second, the amendments expanded the categories of parties who can be sued to now include "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender," as opposed to just an individual who actively commits a crime. N.Y.C. Admin. Code § 10-1104 (hereinafter, the "liability expansion"). These amendments do not retroactively extend liability to entities who could not have been sued at the time of a prior incident, nor do they revive claims under state and federal laws other than the GVPL.

>    **A.    Because, in October 2006, the Only Claims that Plaintiff Accrued Under the GVPL Were Claims Against Her Individual Assailants, the GVPL's 2022 Amendment Could Not Have Revived Any Claims Against Delta.**

The premise of Plaintiff's claim is that the 2022 GVPL amendments created new causes of action and retroactively made them applicable to conduct that was lawful in 2006. As this Court has held twice, the amendments do no such thing. Even assuming, counterfactually, that Plaintiff pleaded sufficient facts as to Delta, the 2022 GVPL amendment could not salvage any claims as to Delta. The GVPL only revived claims that were barred solely because the statute of limitations lapsed, and the liability expansion does not apply retroactively.

Under the GVPL as it existed in 2006 when this incident occurred, there was no claim against any person or entity other than "an *individual* who commits a crime of violence motivated by gender." N.Y.C. Admin. Code § 8-904 (2000) (emphasis added). Delta is not an individual, and it is not the perpetrator of any gender-motivated violence – it did not commit any gender-motivated violence, nor is Plaintiff alleging that it did. As such, when the subject incident occurred, it would not have been possible for Plaintiff to state a GVPL claim against Delta. Thus, for Plaintiff's claims against Delta to survive, there must be some path to retroactively apply new prohibitions enacted

in 2022 as to *entities* for conduct that occurred in 2006. But fundamental principles of New York law permit no such inference.

         i.      <u>New York Law Prohibits the Retroactive Application of the GVPL Liability Expansion.</u>

In New York, there is a deeply rooted presumption against retroactivity based on elementary considerations of fairness if a statute either increases a party's liability for past conduct or imposes new duties with respect to transactions already completed. *See, e.g., Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (2023); *Whitehead v. Pine Haven Operating LLC*, 222 A.D.3d 104 (3rd Dept. 2023). When this presumption applies, the new statute is applied only prospectively unless there is "plain legislative intent to the contrary." *Id.* at 107.

Here, a retroactive application of the liability expansion would increase parties' liability for past conduct and impose new duties with respect to transactions already completed. Prior to the amendments, only *individuals* who perpetrated gender-motivated violent crimes had liability under the GVPL; other persons and entities did not. After the liability expansion, in addition to new liability for those who 'commit,' 'direct,' 'participate in,' or 'conspire in' the commission of gender-motivated violent crime, a vague and broad category of those who 'enable' gender-motivated crime are subject to suit under the GVPL. Applying the liability expansion retroactively would not only impose a new duty of care with respect to previous transactions; it would also subject persons and entities found to 'enable' gender-motivated crimes to automatic punitive damages.[2] Clearly, the liability expansion is subject to the presumption against retroactivity.

---

[2] Previously, punitive damages were prohibited unless the plaintiff proved that the defendant's conduct was "intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence." *See, e.g.*, *McDougald v. Garber*, 73 N.Y.2d 246 (N.Y.1989).

The GVPL amendments' legislative history does not show any intent to apply the liability expansion retroactively. By its own terms, the 2022 amendments revived GVPL claims that were "barred *because the applicable period of limitation has expired*." N.Y.C. Admin. Code § 10-1105 (emphasis added). When New York City Council Member Carlina Rivera, who originally introduced the GVPL amendments, spoke in favor of her bill, she noted the amendments would create, "a two-year look-back window for survivors of gender-motivated violence to file civil actions *against their assailants* under the Gender-Motivated Violence Protection Act of 2000, even if the statute of limitations in the case has already expired."[3] The amendments' plain language or legislative history suggests no intent to revive claims subject to defects other than a lapsed limitations period. The presumption against retroactivity should prevail.

New York law also requires narrow construction of revival statutes, which are extreme examples of legislative power. *S.H. v. Diocese of Brooklyn*, 205 A.D.3d 180 (2nd Dept. 2022). *See also In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740, 815 (E.D.N.Y. 1984). This is true even if a revival statute could otherwise be construed as remedial. *S.H.,* 205 A.D.3d at 188. Claims are not revived without clear and unambiguous language showing that a law intends to revive those claims. *Hopkins v. Lincoln Trust Co.*, 233 N.Y. 213, 215 (1922). Even if a statute clearly and unambiguously intends to revive *some* claims, unless the *plaintiff's* claims clearly fall within the revival, the plaintiff's claims are not revived. *S.H.,* 205 A.D.3d at 188.

Here, the GVPL's revival window appears intended to revive claims that accrued under the pre-amendment GVPL, but which became barred solely by the statute of limitations. It does not intend to impose new liability for past conduct where no claim would have accrued under the old

---

[3] Transcript of Stated Meeting of New York City Council, Dec. 9, 2021 (available at https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993&Options=&Search=), pp. 165-166 (emphasis added).

law. Since Delta was not a perpetrator of any crime, no claim could have accrued against Delta under the pre-amendment GVPL, and there was no claim that the 2022 amendments could revive.

> ii.   This Court Routinely Rejects Expansive Reading of the GVPL, Including in Related Matters.

Applying this bedrock presumption against retroactivity, this Court has refused to apply the GVPL's liability expansion retroactively in two other cases, including one involving allegations strikingly similar to this case. *Bensky v. Indyke*, 743 F.Supp.3d 586 (S.D.N.Y. 2024); *Doe v. Combs*, No. 23-CV-10628, 2024 WL 4987044 (S.D.N.Y. 2024). This Court should do so here as well.

In *Bensky*, Judge Subramanian agreed that the GVPL's amendments were subject to the presumption against retroactive application because they would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Bensky*, 743 F.Supp.3d at 600. Although the *Bensky* plaintiff tried to argue that, since the 2022 amendments revived time-barred claims, they were intended to apply retroactively, the Court disagreed. *Id.* It held that reviving a time-barred claim is not the same as creating a new, substantive obligation retroactively, because the former revives claims that were already complete. *Id.* Without any pre-amendment law presented in support of the plaintiff's argument that the pre-amendment GVPL created a cause of action against a non-assailant, the Court dismissed the plaintiff's GVPL claim. *Id.* at n.5.

In *Combs*, Judge Clarke dismissed claims against corporate entities (including co-defendant Bad Boy Entertainment Holdings, Inc.) brought by a victim of Sean Combs. *Combs*, 2024 WL 4987044, at *[]. The Court began its analysis by noting that, prior to the 2022 amendment, only individuals were subject to a cause of action under the GVPL. *Id.* at *2. Since the law did not include a definition of "individual," the Court looked to the ordinary meaning and found that it meant "a single person, as opposed to a group or institution." *Id.* at *3. The Court

concluded that this means that claims against corporate defendants were not permitted by the pre-2022 GVPL. *Id.* Although the plaintiff argued the amendment's revival provision suggested an intent to apply the statute retroactively, the Court quoted *Bensky* and held that reviving a time-barred claim is not the same as making a new but retroactive obligation. *Id.* Although the plaintiff suggested that the statute was remedial, the court noted that all statutory amendments are somewhat remedial. *Id.* Although the plaintiff called attention to the fact that the amendment expanding liability was summarized as an amendment to "*clarify* that the law applies to such acts committed by parties who direct, enable, participate in, or conspire in a gender-motivated act of violence," the court held that the summary did not indicate that the original 2000 GVPL was intended to be so broad; instead, the summary merely restated the amendment's language. *Id.* at *4 (emphasis added). Ultimately, the Court agreed that the GVPL's amendments did not apply retroactively and dismissed the claims against corporate entities arising out of Combs' abuse. *Id.*

Plaintiff alleges nothing that warrants deviating from the well-reasoned holdings of *Combs* and *Bensky*. Because any claims against Delta—even assuming they were factually well-pleaded—are time barred, this Court should dismiss them with prejudice.

### B.    Nor Does the GVPL Affect Generally Applicable Statutes of Limitations at Issue in Plaintiff's Remaining Claims.

Plaintiff appears to suggest that the GVPL's amendments revived not only claims under the GVPL itself, but also all other claims related to or arising from sexual assault, including her claims for RICO, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. But once again, black letter law precludes Plaintiff's attempt to stretch GVPL.

The GVPL creates its own civil cause of action, and the revival provision applies only to that cause of action. N.Y.C. Admin. Code § 10-1104. By their own terms, the amendments revive "any civil claim or cause of action *brought under this chapter* that is barred because the applicable

period of limitation has expired." N.Y.C. Admin. Code § 10-1105 (emphasis added). This plain language does not revive claims brought *outside* of Chapter 11 of Title 10 of the New York City Administrative Code.

No New York court – including the *Breest* court cited by Plaintiff in her Complaint – has held that general tort claims constitute causes of action brought under the GVPL. *See Breest v. Haggis*, 180 A.D.3d 83, 94 (1st Dept. 2019). Instead, the cases interpreting the GVPL uniformly describe GVPL claims as separate causes of action; they do not treat the GVPL as giving rise to other general tort claims. *See, e.g., Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2021 WL 4124616 (S.D. N.Y. Sep. 9, 2021); *Doe v. Gross*, No. 23-CV-6325, 2024 WL 3729007 (S.D.N.Y. Aug. 7, 2024). New York state courts have specifically found that the legislative intent of the GVPL "was to create a civil rights remedy or cause of action," and *not* to extend the statute of limitations for a particular class of other claims. *Engelman v. Rofe*, 194 A.D.3d 26, 32 (1st Dept. 2021). At issue in *Engleman* was whether state statutes of limitations for assault claims preempted the GVPL's seven-year limitations period. *Id.* The court held that the GVPL did not create a separate class of assault claims subject to a different statute – it created an entirely new and distinct cause of action for a particular kind of civil rights violation. *Id.*

Thus, under *Engleman*, Plaintiff's attempt to characterize the GVPL as giving plaintiffs additional time to bring different causes of action is not viable under New York law. In fact, such a characterization of the GVPL would render it preempted by state statutes of limitations, in direct contravention of *Engleman*'s core holding. This Court should follow *Engleman* and hold that the GVPL's amendments did not revive any claims outside the GVPL. Consequently, because Plaintiff's claims for RICO, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress arise outside of the GVPL, they must be dismissed.

II.    **PLAINTIFF'S CLAIMS AGAINST DELTA SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).**

In addition to the threshold issue of the statute of limitations, Plaintiff's claims must be

dismissed because the SAC fails to state a claim for relief against Delta under either federal or

state law. Fed. R. Civ. P. 12(b)(6). Plaintiff does not allege that she sustained any injury while

boarding, flying, or disembarking her two Delta flights – instead, she attempts to impose liability

on an air carrier for crimes unrelated to Delta at an event unrelated to Delta. The Court has the

inherent power to dismiss frivolous claims, and it should exercise that power here. *See Mallard,*

490 U.S. at 307-308.

A.    **Plaintiff Alleges No Facts Establishing Delta's Role in Racketeering, the
Existence of an Enterprise, any Conduct in Furtherance of the Enterprise, or
Even a Conspiracy**

Plaintiff seeks to charge Delta with a substantive civil RICO violation under 18 U.S.C.

§ 1962 (c), and a conspiracy to commit such a violation under 18 U.S.C. § 1962(d).  But the SAC

utterly fails to allege any facts establishing the predicate for a RICO violation against Delta.

A RICO complaint must show: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2)

an injury to business or property; and (3) that the injury was caused by the violation of Section

1962." *DeFalco v. Bernas*, 244 F.3d 186, 305 (2d Cir. 2001) (internal citations omitted). To state

a substantive civil RICO claim pursuant to section 1962(c), a plaintiff must adequately allege "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v.*

*Imrex Co.*, 473 U.S. 479, 496 (1985). The SAC fails to do so.

In pleading a civil RICO claim, "[i]t is not enough … for a plaintiff simply to allege the

above elements in boilerplate fashion instead, she must allege sufficient facts to support each

element." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998); *see also Lesavoy v.*

*Lane*, 304 F.Supp.2d 520, 532 (S.D.N.Y. 2004) (facts underlying civil RICO claim "must be

15

tightly particularized and connected in a complaint"). "Because the 'mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those names as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.Supp.2d 432, 443 (S.D.N.Y. 2004) (quoting *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998)). "Courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Id.* (cleaned up). In particular, where the underlying allegations of RICO violations are based largely on "information and belief," they are insufficient to survive a motion to dismiss. *A & E World Grp., Inc. v. Wextron, Inc*., No. 85-cv-3867, 1987 WL 8403, at *3 (E.D.N.Y. Mar. 13, 1987). As noted, not only are all Plaintiff's allegations against Delta limited by the qualifier "on information and belief;" there is also no specificity alleged as to any actions by Delta. Lumping Delta together with co-defendants using general and conclusory allegations is insufficient to survive a motion to dismiss. *See Atuahene,* 10 Fed. App'x. at 34.

         i.    <u>Plaintiff Yet Again Fails to Allege a RICO Enterprise.</u>

Despite multiple opportunities to cure, the SAC contains no factual allegations to plausibly infer the existence of a RICO enterprise. The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961 (4). "The existence of an enterprise at all times remains a separate element which must be proved by the [plaintiff]." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "Any principled analysis of a RICO claim … must begin from an understanding of what enterprise is alleged." *Spira v. Nick*, 876 F.Supp. 553, 561 (S.D.N.Y. 1995). This requires a showing "of an ongoing organization, formal or informal, and by evidence

that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583; *see Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162 (2001).

Here, the only allegation as to RICO enterprise is a conclusory statement that the Defendants are "associated with each other as an Enterprise within the meaning of 'Enterprise' as defined in 18 U.S.C. § 1961(4)." ECF 87 ¶ 142. "Simply stating in conclusory fashion that all the defendants are an 'enterprise within the meaning' of the RICO statute is insufficient, absent some factual allegations in support." *Freund v. Lerner*, No. 09-CV-7117, 2010 WL 3156037, at *7 (S.D.N.Y. Aug. 7, 2010). There are no factual allegations here that demonstrate a discernible or ascertainable enterprise or suggest some overall "functional unit." Rather, the "pleadings are entirely silent as to the internal workings or organization of the alleged enterprise, explaining neither how it was run nor by whom." *Greenberg v. Blake*, No. 09-CV-4347, 2010 WL 2400064, at *6 (E.D.N.Y. June 10, 2010).

The alleged illegal purpose of the "RICO Enterprise" is also impermissibly broad and ill-defined. Plaintiff alleges that Defendants "share a common purpose: to use deception, coercion, force, and the threat of violence to enrich themselves at the expense of individuals like the Plaintiff." ECF 87 ¶ 147. And how exactly did Delta use deception, coercion, force, and the threat of violence by simply operating a commercial flight? The SAC still remains silent as to specifics. *First Nationwide Bank v. Gelt Funding Corp.*, 820 F.Supp. 89, 98 (S.D.N.Y. 1993) (holding that the enterprise purpose must be fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves). Even after two amendments, Plaintiff has not advanced any factual allegations that the "RICO Enterprise" was an "ongoing organization, formal or informal, or any "evidence that the various associates' of the alleged enterprise functioned "as a continuing unit." *Turkette*, 452 U.S. at 583. Thus, there is no basis to support the conclusion that

the supposed constituent persons and entities of the "RICO Enterprise" were "associated together for a common purpose of engaging in a course of conduct." *Id*.

On the contrary, Plaintiff lumps Delta with every other defendant based on the sole factual allegation that Plaintiff flew Delta nearly 20 years ago. Nowhere does she allege facts to demonstrate any actual relationship between Delta and the other various defendants. *See Automated Teller Mach. Advantage LLC v. Moore*, No. 08-CV-3340, 2009 WL 2431513, at *7 (S.D.N.Y. Aug. 6, 2009) (relationship means the relationship within the enterprise, i.e., the roles played by each member in the alleged RICO scheme). "Other than conclusory allegations, nothing in the complaint addresses the relationships among defendants in a manner that distinguishes between the 'enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering." *Singh v. Parnes*, 199 F.Supp.2d 152, 162 (S.D.N.Y. 2002 (cleaned up). Besides allegations that Delta provided routine transportation services to Plaintiff, the SAC is bare of any allegations of Delta's association with or role in the "RICO Enterprise." Plaintiff's "conclusory naming of a string of entities does not adequately allege an enterprise." *Moy v. Terranova*, No. 87-CV-1578, 1999 WL 118773, at *5 (E.D.N.Y. Mar. 2, 1999) (cleaned up).

ii.    Delta Cannot Be Held Liable under RICO for Merely Providing Air Transportation Services.

In *Reves v. Ernst & Young*, 507 U.S. 160 (1993), the Supreme Court set forth the standard to determine whether a defendant's activity constitutes sufficient participation in a RICO enterprise to hold it liable for a substantive RICO violation. In drawing the line, the *Reves* Court held that, at a minimum, the RICO statute requires that the defendant have "*some* part in directing the enterprise's affairs," meaning the defendant must have "participated in the operation or management of the enterprise itself." *Id*. at 179, 183 (emphasis in original). "[I]t is not enough for a defendant to conduct or participate in its own affairs—to be liable it must participate in the

conduct of the <u>enterprise's</u> affairs." *New York v. Utd. Parcel Serv., Inc*, 15-CV-1136, 2016 WL 4203547 at *4 (S.D.N.Y. Aug. 9, 2016) (emphasis in original). Performing tasks necessary or helpful to the enterprise does not itself meet the requirements of § 1962(c). *Id.*; *see also First Nationwide*, 820 F.Supp. at 98 ("each such borrower acted on a particular occasion to benefit himself or herself and not to assist any other borrower. That series of discontinuous independent frauds is no more an 'enterprise' than it is a single conspiracy").

Subsequent to *Reves*, courts in the Second Circuit have made clear that providing ordinary but important business services to a RICO enterprise is not itself sufficient to meet the operation or management test. *See Manhattan Telecomms. Corp. v. DialAmerica Mktg, Inc.*, 156 F.Supp.2d 376, 382 (S.D.N.Y. 2001) (where defendant's alleged purpose was no different than its usual business purpose, it was "no more united in an enterprise than any vendor and its customers"); *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F.Supp. 449 (S.D.N.Y. 1996) (finding "no evidence to support the inference of an agreement" by accounting firm to violate RICO, even assuming firm provided non-routine services that "establish[ed] assistance to the enterprise" and that firm's auditing was "sloppy" and "insufficiently probing"); *RD Mgmt. Corp. v. Samuels*, No. 02-CV-4876, 2003 WL 21254076, at *6 (S.D.N.Y. May 29, 2003) (rejecting RICO enterprise where alleged enterprise members "were in a vendor-customer relationship and thus did not share a common purpose"); *Rosner v. Bank of China*, 528 F.Supp.2d 419, 428-29 (S.D.N.Y. 2007) ("The fact that BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose to violate RICO").

Plaintiff alleges that an airline can be held liable as if it is a criminal enterprise simply for providing airline services. But under binding precedent, an outside service provider can only be

liable under RICO if it has operated or managed the affairs of the enterprise, not just its *own* affairs.
*Reves*, 507 U.S. at 179. Plaintiff brings zero allegations supporting the conclusion that Delta
*participated* in the affairs of the "RICO Enterprise," much less allegations that Delta *operated or
managed* the affairs of the "RICO Enterprise." *Id*.

Because her substantive RICO claim is deficient, Plaintiff's RICO conspiracy claim must
also fail. To establish a RICO conspiracy violation under § 1962(d), "a plaintiff must show that
the defendant agreed with at least one other entity to commit a substantive RICO offense." *UPS*,
2016 WL 4203547 at *4. "A conspirator must intend to further an endeavor which, if completed,
would satisfy all of the elements of a substantive [] offense, but it suffices that he adopt the goal
of furthering or facilitating the [] endeavor." *Salinas v. U.S.*, 522 U.S. 52, 65 (1997). Courts in the
Second Circuit repeatedly have held that "'[a]ny claim under § 1962(d) based on conspiracy to
violate the other subsections of section 1962 necessarily must fail if the substantive claims are
themselves deficient.'" *See, e.g. Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996),
*vacated on other grounds*, 525 U.S. 128 (1998) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4
F.3d 1153, 1191 (3d Cir. 1993)).

Even if Plaintiff's RICO conspiracy claims did not automatically fail, Plaintiff has simply
not alleged facts supporting that Delta entered into an agreement with another to violate § 1962(c).
*United States v. Pizzonia*, 577 F.3d 455, 464 (2d Cir. 2009) ("[A] RICO conspiracy . . . is an
agreement to conduct or to participate in the conduct of a charged enterprise's affairs <u>through</u> a
pattern of racketeering." (emphasis in original)). Plaintiff has not provided any facts showing with
any particularity with whom Delta made any such agreement or when such an agreement was
made. Plaintiff's bald assertion that Delta and its agents knowingly committed numerous predicate
acts cannot, by itself, support the existence of an agreement to support a RICO conspiracy claim.

iii.    Plaintiff, Yet Again, Fails to Plead Fraud with Particularity.

Even assuming, counter-factually, that Plaintiff alleged a RICO enterprise that Delta was an active part of, or a conspiracy that Delta knew about and somehow furthered, the RICO allegations fail for the additional reason that Plaintiff fails to allege any predicate acts, let alone predicate mail and wire fraud with any degree of reasonable particularity.

Where, as here, a RICO claim is based on predicate acts of wire and mail fraud, the fraud must be pled with particularity, and "the plaintiff must allege facts that give rise to a *strong* inference of fraudulent intent." *Moore v. PainWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (emphasis added; internal quotation marks omitted); *accord Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995); Fed. R. Civ. P. 9(b). Here, Plaintiff only alleges one specific fact: she flew on two Delta flights in 2006. She alleges nothing else that gives rise to any inference, much less a *strong* inference, that any aspect of those flights constituted mail or wire fraud. What was the scheme, artifice, or device deployed by Delta? Nothing is alleged. What false statements or omissions did Delta make? None can be found in the operative complaint after two amendments.

Contrary to Plaintiff's attempt to skate by with cursory allegations based on "information and belief," in a RICO claim, the actual fraud alleged "must be stated with particularity." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (internal quotation marks omitted). Although it is true that matters within a defendant's knowledge may be pleaded "on information and belief," this does not mean that those matters may be pleaded lacking any detail at all; such allegations must be accompanied by a statement of the facts upon which the belief is based. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Plaintiff's allegations fail to describe any predicate acts of mail and wire fraud, let alone with any degree of particularity to satisfy Rule 9(b). Plaintiff's RICO claim should therefore be dismissed.

### B.    Plaintiff Fails to State a Claim Against Delta for Common Law Negligence.

Count Ten of the SAC claims that Delta is liable for negligence. A plaintiff asserting a negligence claim under New York law must establish three elements: (1) the existence of a duty on defendant's part as to the plaintiff (2) breach of that duty; and (3) injury to the plaintiff as a result thereof. *Pasternack v. Lab Corp. of Am.*, 892 F.Supp. 2d 540, 552 (S.D.N.Y. 2012). Where "the defendant owes no duty to the plaintiff, the action must fail." *Diego Beekman Mutual Housing Ass'n Housing Dev't Fund Corp. v. Dish Network, LLC*, 15-CV-1094, 2016 WL 1060328, at *4 (S.D.N.Y. Mar. 15, 2016). Delta owes a duty to its passengers to exercise reasonable care for their safety. *See, e.g., Stagl v. Delta Air Lines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995). However, that does not mean that Delta had a duty to prevent all harm to Plaintiff during the entirety of her trip, even while she was not Delta's passenger. Delta is not aware of any authority imposing a duty of care on an airline to ensure a passenger is not the victim of third-party crime when the passenger has safely completed her flight, left the airport without incident, and proceeded to her trip's destination.

Plaintiff's conclusory allegations unsupported by facts fail to state a claim for negligence. *See Anonymous v. Simon*, No. 13-CV-2927, 2014 WL 819122, at *4 (S.D.N.Y. Mar. 13, 2014) (dismissing claim lacking factual support for allegation that defendant knew of risk to plaintiff); *Hopper v. Banana Republic, LLC*, No. 07-CV-8526, 2008 WL 490613, at *2 (S.D.N.Y. Feb. 25, 2008) (dismissing negligence claim containing only speculative and implausible facts concerning the defendants' knowledge). Plaintiff cannot rest "on the mere hope that the discovery process will provide necessary facts to support [her] claim;" she must allege facts that plausibly support a claim. *Fahs Const. Grp., Inc. v. Gray*, No. 10-CV-0129, 2012 WL 2873534, *3 (N.D.N.Y. July 12, 2012). Since she has not, her claim must be dismissed.

### C.    Plaintiff Fails to Allege a Claim Against Delta for Violation of the GVPL.

Plaintiff's Eleventh Cause of Action attempts to allege violation of the GVPL, described in detail above in Section I of this Memorandum. To state a claim for violation of the GVPL, a plaintiff must allege conduct by the defendant that gives rise to a plausible inference that the defendant "commit[ted], direct[ed], enable[d], participate[d] in, or otherwise conspire[d] in the commission of a crime of violence motivated by gender."  N.Y.C. Admin. Code § 10-1104.

Plaintiff's allegation that Delta "enabled" the alleged misconduct of Combs is not supported by a single factual allegation in the SAC. Plaintiff does not allege any fact supporting that, in October 2006 Delta had knowledge of any purported propensities for misconduct by Plaintiff's assailant or assailants. Plaintiff's allegations are nothing more than the sort of "formulaic recitation[s] of the elements" of the cause of action that federal courts routinely reject as insufficient. *Twombly*, 550 U.S. at 555; *Doe v. Alsaud*, 12 F.Supp.3d 674 (S.D.N.Y. 2014) (dismissing negligent supervision and retention claim where the pleadings lacked any factual support for conclusory allegation that the defendant "knew or should have known of an assailant's predisposition for abusing women); *Capak v. St. Execs Mgmt.*, No. 20-CV-11079, 2021 WL 2666007, at *4 (S.D.N.Y. June 29, 2011) (dismissing negligent hiring and retention claim where complaint lacked factual allegations that assailant had known propensity for violence when hired).

Plaintiff does not – and cannot – allege any conduct *by Delta* that could have plausibly injured her. Delta was not involved with Plaintiff's sexual assault, and none of the allegations related to Delta in the SAC give rise to a plausible inference otherwise. In 2024, this Court found a plaintiff failed to state a claim against a defendant for aiding and abetting sexual assault when the defendant introduced the plaintiff to her assailant knowing he had a history of inappropriate conduct and actively discouraged the plaintiff from reporting her assault. *Beter v. Baughman*, 24-

23

CV-0079, 2024 WL 1333570, at *11, 13-14 (S.D.N.Y. Mar. 13, 2024). Under those facts, the Court held that there was no legally cognizable claim because the complaint did not support an inference that the defendant knew his conduct would help the assailant assault the plaintiff or intended to help that assault occur. *Id.* at *11-14. Unlike the defendant in *Beter*, here, Plaintiff does not even plausibly allege that Delta introduced Plaintiff to her assailants or knew of any prior histories of assault by any assailant. As in *Beter*, this Court should find that there is no cognizable claim against Delta.

> **D.    Plaintiff Fails to State a Claim Against Delta for Negligent Infliction of Emotional Distress.**

Plaintiff's Twelfth Cause of Action attempts to assert a claim against Delta for negligent infliction of emotional distress. The stated basis for this claim is a vague allegation that the defendants created an unreasonable risk of emotional distress, devoid of any specific facts about Delta. ECF 87 ¶ 305. A claim for negligent infliction of emotional distress requires that the defendant owe the plaintiff a duty that is "specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693 (2d Cir. 1996); *Hopper*, 2008 WL 490613, at *2. Such a claim requires that the defendant's conduct "is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Plaintiff does not plead that anything about the environment aboard Delta's flights was unsafe or emotionally distressing for her, and the SAC makes clear that Black Party was far removed in time and location from Plaintiff's Delta flights. ECF 87 ¶¶ 84-114. Plaintiff does not allege facts necessary to support a claim for negligent infliction of emotional distress against Delta.

## <u>CONCLUSION</u>

Now almost 19 years after flying from Oklahoma to New York aboard a Delta Air Lines aircraft, Plaintiff alleges that somehow Delta was part of a racketeering enterprise and conspired in her sexual assault at a private party long after her flight was completed. The allegations are stale and should be dismissed because they are long past any relevant statute of limitations. Nor can the stale allegations be salvaged by amendments to GVPL. Even if they were timely, Plaintiff's cursory, conclusory, and impermissible group pleading is a far cry from the facts she is required to allege under *Twombly* and *Iqbal*, let alone the specificity demanded by Rule 9(b) for her RICO claims. After three complaints, Plaintiff still cannot allege a single, inculpatory fact about Delta. For these reasons, Plaintiff's Second Amended Complaint should be dismissed with prejudice as against Delta Air Lines, Inc.

Dated: August 11, 2025                                Respectfully submitted,

Nicole Wolfe Stout, Esq.                    /s/ M. Roy Goldberg
STRAWINSKI & STOUT                    M. Roy Goldberg, Esq.
Centrum at Glenridge                         CLARK HILL PLC
780 Johnson Ferry Road NE              1001 Pennsylvania Avenue, N.W.
Suite 230                                            Suite 1300 South
Atlanta, Georgia 30342                       Washington, D.C. 20004
Tel. (470) 945-0074                           Tel. (202) 552-2388
Fax (404) 264-1450                           Fax (202) 772-0919
Email: nws@strawlaw.com               Email: rgoldberg@clarkhill.com
(Admitted Pro Hac Vice)                    (Admitted Pro Hac Vice)

                                                        Steven M. Richman, Esq.
                                                        CLARK HILL PLC
                                                        1180 Avenue of the Americas
                                                        Suite 1910
                                                        New York, NY 10036
                                                        Tel. (646) 395-8580
                                                        Fax (646) 395-8700
                                                        Email: srichman@clarkhill.com

COUNSEL FOR DEFENDANT DELTA AIR LINES, INC.

## <u>CERTIFICATION OF COMPLIANCE</u>

  This is to certify that the foregoing Memorandum of Law was prepared using Times New Roman 12-point font in accordance with this Court's Individual Rules and Practices in Civil Cases Paragraph 5 and Local Civil Rule 11.1, and is within the 25-page limit set forth therein. The word count – 8,142 words – is also under words based on Microsoft Word's program for determining same in compliance with Local Civil Rule 7.1.

        By:  */s/ Roy Goldberg*
            M. Roy Goldberg

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 11, 2025, the foregoing Motion and Brief were served via the on all counsel of record through the Court's CM/ECF system.

By:    <u>*/s/M. Roy Goldberg*</u>
M. Roy Goldberg

72767\508878\283008394