UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                   :

LATROYA GRAYSON,                        :

                Plaintiff,        :

                                  :       24-CV-09857 (JAV)

      -v-                     :

                                  :      OPINION AND ORDER

SEAN COMBS a/k/a "P. DIDDY, DIDDY, PUFF,  :
PUFF DADDY, PUFFY, BROTHER LOVE," et al., :

                                :

             Defendants.    :

                                :
------------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Latroya Grayson brings this suit against Defendant Sean Combs

("Combs") and various other defendants, including Defendant Delta Air Lines, Inc.

("Delta"), alleging claims of negligence and negligent infliction of emotional distress,

violations of the Racketeer Influenced and Corrupt Organization Act ("RICO")

under 18 U.S.C. § 1962, and violations of the New York City Victims of Gender-

Motivated Violence Protection Act ("GMVPA") under N.Y.C. Admin. Code § 10-1104.

ECF No. 87 ("Second Amended Complaint" or "SAC") at 1-2, 33-45, 61-67.  Presently

before the Court is Delta's motion to dismiss.  ECF No. 93 ("Motion to Dismiss").

Delta has moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure on the grounds that the claims are time-barred under the

relevant statute of limitations and for failure to state a claim.  ECF No. 94 ("Mem.")

at 2.  Delta's Motion to Dismiss is **GRANTED**.

## BACKGROUND

A.    **Factual Background**

The following facts are accepted as true and construed in the light most favorable to the Plaintiff for the purposes of this motion. *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

In late 2006, Plaintiff Latroya Grayson received an opportunity to fly to New York City to attend a party hosted by Combs. SAC, ¶¶ 80-81, 88. Plaintiff's sibling had been selected as the winner of a radio contest for an all-expenses paid vacation for two to New York City and two invitations to a celebrity party hosted by Defendant Combs. *Id.*, ¶¶ 77, 79-81. The alleged purpose of the radio contest and the party was to promote Combs's new album and his cover on Vibe Magazine. *Id.*, ¶ 92. The radio contest and the party were sponsored and funded by Combs and his partnerships with various organizations, including Delta. *Id.*, ¶¶ 77, 92.

Delta was responsible for arranging plane tickets and transporting Plaintiff and her sibling to New York City. *Id.*, ¶ 45. Accordingly, Delta issued Plaintiff a round-trip plane ticket from Tulsa, Oklahoma to New York, New York, departing on October 16, 2006 and returning on October 17, 2006. *See id.*, ¶ 85.

On the evening of October 16, 2006, Plaintiff attended the celebrity party hosted by Combs. *Id.*, ¶ 97. After consuming some premade alcoholic drinks, Plaintiff began to feel sick. *Id.*, ¶ 105. The next day, Plaintiff woke up at Saint Vincent's Medical Center of New York with no memory of how she arrived there. *Id.*, ¶¶ 106-07. Plaintiff believes that she was drugged, assault, and robbed at

Combs's party. *Id.*, ¶ 114. After being discharged from the hospital, Plaintiff returned to Oklahoma on her scheduled Delta flight on October 17, 2006. *Id.*, ¶¶ 115-16.

## B.    Procedural History

On December 20, 2024, Plaintiff filed this lawsuit. ECF No. 1. On January 5, 2025, the Court ordered Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. ECF No. 7. Plaintiff filed an amended complaint on February 26, 2025. ECF No. 10 ("First Amended Complaint").

On April 15, 2025, Delta filed a motion to dismiss the First Amended Complaint. ECF No. 45. On April 22, 2025, the Court issued an order providing Plaintiff an opportunity to amend the complaint in light of the issues raised in the motion to dismiss. ECF No. 46. The Court warned that "there will likely not be any further opportunity to amend the complaint to address issues raised by the motion to dismiss." *Id.* On July 20, 2025, Plaintiff filed the Second Amended Complaint, which is currently the operative pleading.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [the standard] requires more than labels[,] conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## DISCUSSION

Delta moves to dismiss each of Plaintiff's claims as barred under the relevant statute of limitations. *See* Mem. at 6-14. Plaintiff counters that her claims were revived by the GMVPA, and that even if not revived, they are subject to various equitable tolling and estoppel doctrines. ECF No. 113 ("Opp'n") at 2-3.

The Court does not reach the issue of whether the claims were timely brought because the pleadings fail to state a claim. The Second Amended Complaint's only non-conclusory allegation concerning Delta is that it acted as a sponsor of a radio contest in 2006 and provided free air transportation to New York to the winning contestants. SAC, ¶¶ 45, 77, 85, 92. This innocuous activity does not expose Delta to liability for an assault committed by a third party.

4

Plaintiff was provided the opportunity to amend her complaint to amplify her allegations in response to Delta's first motion to dismiss and has still failed to plead facts sufficient to establish a claim against Delta for negligence, intentional infliction of emotional distress, or violations of the RICO Act.  Accordingly, these claims are dismissed with prejudice.

## A.    Negligence

Under New York law, a plaintiff must establish three elements to prevail on a negligence claim: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (citation omitted).[1]  "For a defendant airline to demonstrate that it was *not* negligent, it can show that it had no duty to the plaintiff, that it did not breach any duty that *did* exist, or that the injury suffered by the plaintiff was not proximately caused by any breach made by the defendant." *Lee v. Air Canada*, 228 F. Supp. 3d 302, 312 (S.D.N.Y. 2017).

Plaintiff's only allegations of Delta's involvement in her injuries was that Delta sponsored the contest won by her sibling and that it then provided the contest winners with air transportation to New York City, where Plaintiff's injuries occurred.  SAC, ¶¶ 45, 77, 85, 92.  "A common carrier such as an airline generally owes its passengers a duty of reasonable care under the circumstances." *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998) (applying New York law).  "This duty

---

[1] The parties both cite New York law with respect to Plaintiff's common law negligence claim.  *See* Mem. at 22; Opp'n at 4.  In light of the parties' agreement that New York law applies, the Court does not engage in a choice of law analysis.

requires the common carrier to exercise care which a reasonably prudent carrier of passengers would exercise under the same circumstances, in keeping with the dangers and risks known to the carrier or which it should reasonably have anticipated." *Id.* (cleaned up) (applying New York law).  But Plaintiff fails to plead any facts to indicate that, in 2006, Delta knew or should have foreseen that Plaintiff would be assaulted at Combs's party.  *See Stanton v. Manhattan E. Suite Hotels*, No. 01-CV-2394 (LTS) (FM), 2002 WL 31641127, at *2, 4 (S.D.N.Y. Nov. 22, 2002) ("In *Stagl*, the court found that Delta had a duty to safeguard passengers because it was a carrier with awareness of a specific hazardous condition.  In so finding, the Court determined that Delta had prior knowledge that other passengers had been injured by an ongoing concentration of unruly travelers in the baggage claim area.").  Sexual assault is not a reasonably foreseeable risk of sponsoring a radio contest.

Although pled as a negligence claim, the Second Amended Complaint suggests that Delta acted intentionally and with full knowledge when it sponsored Plaintiff's transportation to New York.  Specifically, the Second Amended Complaint uses group pleading to allege that all Defendants were part of a "scheme to misrepresent the true purpose of Defendant Combs'[s] parties," and to "lur[e]" women to attend a party to satisfy "Defendant Combs'[s] personal desires."  SAC, ¶¶ 144, 161.  This conclusory assertion of knowledge does not suffice.  Absent specific factual allegations from which it could plausibly be inferred that Delta had

such knowledge or intent at the time it sponsored the radio contest, Plaintiff cannot show that Delta breached its duty of care.

The Second Circuit has recognized that Delta owes a duty to all passengers to exercise reasonable care for their safety, including protection from the "foreseeable, injurious actions of third parties." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995). However, this duty of care is not so broad as to require protection of passengers from all injuries caused by a third party at their destination city. *See Gross v. Am. Airlines, Inc.*, 755 F. Supp. 89, 90 (S.D.N.Y. 1991) (declining to impose unreasonable or "silly" duties for airlines). Delta did not have a duty to exercise reasonable care for Plaintiff for the entirety of her vacation. At the time Plaintiff suffered her injuries at Combs's party from a third party, she was no longer Delta's passenger. Plaintiff was a victim of a third-party crime committed after she safely completed her Delta flight and left the airport premises without incident.

Plaintiff's injuries bear no substantial connection to any alleged breach of duty imposed on Delta. Accordingly, Plaintiff's negligence claim is dismissed.

## B.    Negligent Infliction of Emotional Distress

Pleading a negligent infliction of emotional distress claim under New York law requires "alleg[ing] (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021). New York law does not ordinarily impose a duty to protect others from emotional distress caused by

7

third parties unless the defendant has the authority to control the conduct of such third parties. *Id.*

As noted above, Delta had no duty to exercise reasonable care to protect Plaintiff from a third-party crime committed after she safely completed her Delta flight and left the airport premises without incident. Accordingly, Plaintiff's claim for negligent infliction of emotional distress fails as a matter of law.

## C.    RICO

Plaintiff raises two distinct civil RICO claims, one under 18 U.S.C. § 1962(a), and the other under 18 U.S.C. § 1962(c), as well as a claim that Delta conspired to violate the two sections of the RICO statute under 18 U.S.C. § 1962(d). SAC, ¶¶ 134-83.

### 1.    Substantive RICO Claims

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Under Section 1962(a), it is "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

To state a substantive RICO claim under either provision, a plaintiff must allege facts showing the existence of an enterprise.  The term "enterprise," as defined in the RICO statute, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Supreme Court has explained that a RICO enterprise includes "any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981).

This type of association-in-fact enterprise must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  "[C]onclusory allegations are insufficient to survive a motion to dismiss RICO claims, especially given the inevitable stigmatizing effect a RICO claim can have on a defendant."  *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006) (cleaned up), *aff'd sub nom. Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31 (2d Cir. 2008).

The Amended Complaint is devoid of any non-conclusory allegations from which it can plausibly be inferred that Delta had joined the other Defendants to form an association with a mutual purpose.  The Amended Complaint asserts that "Defendants all share a common purpose: to use deception, coercion, force, and the

threat of violence to enrich themselves at the expense of individuals like the Plaintiff." SAC, ¶ 147. Yet Plaintiff does not explain why Delta would share this purpose, how it enriched itself through this purported enterprise, or what benefit it stood to gain by joining such an association.

These sparse pleadings are comparable to those found deficient by the Second Circuit in *D. Penguin Bros. Ltd. v. City Nat. Bank*:

> Although the complaints allege that the goal of the purported association-in-fact enterprise was 'to purchase the favor and influence of political leaders and government officials,' this allegation is little more than a naked assertion devoid of further factual enhancement. Notably absent from the complaints' narrative are any allegations that CNB benefited in any way from the alleged enterprise. Similarly, the complaints lack any specific factual allegations about the intent of any RICO defendant other than Spiegelman or Williams. The complaints further fail to suggest why CNB or Spiegelman would share the goal of deriving political support for NBUF with Williams. Plaintiffs' failure to allege a plausible common purpose among the RICO defendants is fatal to their assertion that these defendants formed an association-in-fact RICO enterprise.

587 F. App'x 663, 668 (2d Cir. Oct. 16, 2014) (summary order) (cleaned up).

The Amended Complaint similarly fails to adequately set forth the relationships between the various members and their roles in the purported RICO enterprise. According to the Second Amended Complaint, Defendants, including Delta, "orchestrated, participated, managed, and executed the RICO Enterprise." SAC, ¶ 148. And it vaguely asserts that this "association was structured by various agreements, deals, contracts, and non-contractual relationships between the Defendants, by which Defendants assumed different roles in knowingly and directly or indirectly participating in the acts necessary to carry out the directives of the

10

Enterprise." *Id.*, ¶ 145. The only additional allegation regarding the enterprise's structure or function is the conclusory statement that "[t]he RICO Enterprise has functioned as a continuing unit and maintains an ascertainable structure separate and distinct from the pattern of racketeering activity." *Id.*, ¶ 150.

No detail is provided regarding the relationship between Delta and any other purported members of the alleged RICO enterprise, their various roles in this enterprise, the nature of these various "agreements," "deals," or "contracts" that allegedly formed the structure of their association, or how this enterprise functioned.

> Where a plaintiff fails to provide any solid information regarding the hierarchy, organization, and activities of an alleged association in fact and fails to explain each participant's role in the alleged course of fraudulent or illegal conduct, there is no basis to support the conclusion that the individuals were associated together for a common purpose of engaging in a course of conduct.

*Beter v. Murdoch*, No. 17-CV-10247 (GBD), 2018 WL 3323162, at *6 (S.D.N.Y. June 22, 2018) (cleaned up), *aff'd* 771 F. App'x 62 (2d Cir. June 20, 2019) (summary order); *see also New York v. United Parcel Serv., Inc.*, No. 15-CV-1136, 2016 WL 4203547, at *3 (S.D.N.Y. Aug. 9, 2016).

Because Plaintiff failed to plead any factual allegation of an enterprise as defined in the RICO statute, Plaintiff's substantive RICO claims fail as a matter of law.

### 2. Conspiracy Claim

"To establish the existence of a RICO conspiracy under 18 U.S.C. § 1962(d), "a plaintiff must prove the existence of an agreement to violate RICO's substantive

11

provisions." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (cleaned up). That is, "a complaint must allege that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." *Black v. Ganieva*, 619 F. Supp. 3d 309, 329 (S.D.N.Y. 2022), *aff'd* No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). "[T]he existence of a RICO enterprise is not a required element of a RICO conspiracy claim." *Id.* at 330 (cleaned up). But "where a RICO conspiracy claim does not adequately plead an agreement to conduct which, if completed, would satisfy the elements of the substantive RICO statute, the conspiracy claim under § 1962(d) also fails." *Id.* (cleaned up).

Nowhere in the Amended Complaint does Plaintiff plead that Delta entered into an agreement with the other purported members of the conspiracy to participate in an enterprise through a pattern of racketeering activity. Accordingly, the conspiracy claim is dismissed.

**D.    GMVPA Claim**

To state a claim for violation of the GMVPA, a plaintiff must allege conduct by the defendant that gives rise to a plausible inference that the defendant "commit[ted], direct[ed], enable[d], participate[d] in, or conspire[d] in the commission of a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104 (2026). The GMVPA, as enacted in 2000, only supplied a civil cause of action against the "individual" who perpetrated a gender-motivated crime of violence. *See* N.Y.C. Admin. Code § 10-1104 (2000). Under this original version of the statute,

only the individual perpetrator could be held liable for violations of the GMVPA. *See, e.g., S.S. v. Rockefeller Univ. Hosp.*, 236 N.Y.S.3d 145, 147 (1st Dep't 2025).

In 2022, the City Council amended the statute to expand liability to "any party" N.Y.C. Admin. Code § 10-1104 (2022). Following this amendment, corporate defendants can now be held liable for enabling or conspiring with the perpetrator to violate the statute. *See S.S.*, 236 N.Y.S.3d at 147.

Yet this statute does not apply retroactively to conduct enabling gender-motivated violence that occurred in 2006. *Id.* "As a general rule, a new statute does not apply retroactively to conduct that occurred prior to the statute's enactment." *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 590 (S.D.N.Y. 2012). Moreover, "retroactive operation is not favored by [New York] courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (N.Y. 1998). Applying these principles, the First Department of New York's Appellate Division has concluded that the portion of the 2022 amendment concerning enabling conduct "does not contain any text reflecting an intention to have retroactive effect" and thus does not "apply retroactively." *S.S.*, 236 N.Y.S.3d at 147; *see Tucker v. Combs*, No. 24-CV-7772 (JPO), 2026 WL 654390, at *2 (S.D.N.Y. Mar. 9, 2026).

This Court follows the decision of the First Department and concludes that Plaintiff has failed to state a claim against Delta under the GMVPA.

## CONCLUSION

Delta's Motion to Dismiss is **GRANTED**. As Plaintiff has previously been afforded the opportunity to amend her pleadings to address the issues raised by Delta's Motion to Dismiss, no further opportunity to amend the complaint with respect to the claims involving Delta shall be granted, and the dismissal is with prejudice. The Clerk of Court is directed to terminate ECF No. 93.

    SO ORDERED.

Dated:  March 20, 2026
      New York, New York          _____
                                    JEANNETTE A. VARGAS
                                  United States District Judge

14